Frank J. KELLEY, Attorney General of the State of Michigan, and the State of Michigan, Plaintiffs and Counter Defendants,

v.

THOMAS SOLVENT COMPANY; Thomas Development, Inc.; Thomas Solvent Company of Detroit, Inc.; Thomas Solvent Company of Muskegon, Inc.; Thomas Solvent, Inc. of Indiana; TSC Transportation, Inc.; Richard E. Thomas; and Grand Trunk Western Railroad Company, Defendants.

GRAND TRUNK WESTERN RAILROAD CO., Counter Plaintiff and Cross–Plaintiff,

v.

THOMAS SOLVENT COMPANY; Thomas Development, Inc.; Thomas Solvent Company of Detroit, Inc.; Thomas Solvent Company of Muskegon, Inc.; Thomas Solvent, Inc. of Indiana; TSC Transportation, Inc.; and Richard E. Thomas, Cross–Defendants.

THOMAS SOLVENT COMPANY and Richard Thomas, Counter Plaintiffs,

v.

GRAND TRUNK WESTERN RAILROAD, Counter Defendant and Third Party Plaintiff,

v.

Richard E. THOMAS as Trustee of the Richard E. Thomas Living Trust, the Richard E. Thomas Living Trust, and Letha Thomas, Third Party Defendants.

UNITED STATES of America, Plaintiff,

v.

THOMAS SOLVENT COMPANY; Thomas Development, Inc.; Thomas Solvent Company of Detroit, Inc.; Thomas Solvent Company of Muskegon, Inc.; Thomas Solvent, Inc. of Indiana; TSC Transportation, Inc.; Richard E. Thomas; and Grand Trunk Western Railroad Company, Defendants.

GRAND TRUNK WESTERN RAILROAD COMPANY, Cross–Plaintiff,

v.

THOMAS SOLVENT COMPANY; Thomas Development, Inc.; Thomas Solvent Company of Detroit, Inc.; Thomas Solvent Company of Muskegon, Inc.; Thomas Solvent, Inc. of Indiana; TSC Transportation, Inc.; and Richard E. Thomas; Cross–Defendants.

THOMAS SOLVENT COMPANY and Richard Thomas, Counter Plaintiffs,

v.

GRAND TRUNK WESTERN RAILROAD COMPANY, Counter Defendant and Third Party Plaintiff,

v.

Richard E. THOMAS as Trustee of the Richard E. Thomas Living Trust; the Richard E. Thomas Living Trust; and Letha Thomas, Third Party Defendants.

Nos. K86–164, K86–167.

United States District Court, W.D. Michigan.

Sept. 24, 1990.

See also 790 F.Supp. 710.

Frank J. Kelley, Atty. Gen. by Robert P. Reichel, Asst. Atty. Gen., Environmental Protection Div., Lansing, Mich., for plaintiffs and counter defendants.

Foster, Swift, Collins & Coey, P.C. by Charles E. Barbieri, John L. Collins, Lansing, Mich., for Thomas Solvent Co. and Richard E. Thomas.

Sullivan, Hamilton & Schulz by James M. Sullivan, Battle Creek, Mich., for Thomas Solvent Co. of Detroit, Inc., Thomas Solvent, Inc. of Indiana, TSC Transp. Inc., Thomas Solvent Co. of Muskegon, Inc. and Thomas Development, Inc. Bodman, Longley & Dahling by Frederick J. Dindoffer, R.

Craig Hupp and Mary P. Sclawy, Detroit, Mich., for Grand Trunk Western R. Co.

John S. Smietanka, U.S. Atty. by Julie Ann Woods, Asst. U.S. Atty., Grand Rapids, Mich., Joel M. Gross and Steven J. Willey, Environmental Enforcement Section, Land and Natural Resources Div., U.S. Dept. of Justice, Washington, D.C. (Roger Grimes and Jesse A. Goldfarb, Asst. Regional Counsel, U.S. E.P.A., Chicago, Ill., of counsel), for U.S.

Bremer, Wade, Nelson & Alt by Michael D. Wade, Grand Rapids, Mich., for Great American Surplus Lines Ins. Co.

Farr & Oosterhouse by Kenneth R. Oosterhouse, Grand Rapids, Mich., amicus curiae, for General Foods Corp., Essex Group, Inc., BASF Corp., Tyler Refrigeration Corp., G.F. Corp., Clark Equipment Co., Reichold Chemical, Inc., Miles Laboratory, Inc., Hoover Universal, Inc., Starcraft Corp., Lear Siegler, Inc., Twin Y Corp. and Acme Printing Ink Co.

Patton, Boggs & Blow by J. Gordon Arbuckle, John C. Martin and David J. Farber, Washington, D.C., amicus curiae, for General Foods Corp., Essex Group, Inc. and BASF Corp.

## OPINION

ENSLEN, District Judge.

This case is before the Court on five motions relating to United States' claims for response costs and other costs involving the contamination at the Verona Well Field and surrounding areas. On January 7, 1988, the United States filed a motion for a ruling as to the appropriate standard and scope of review of agency action under CERCLA. Defendant Grand Trunk Western Railroad responded on February 8, 1988, with a counter-motion for a declaration as to the appropriate standard and scope of review. Defendants Thomas Solvent and Richard Thomas joined in Grand Trunk's motion. Later in the year, defendants Thomas Solvent and Richard Thomas filed a motion for partial summary judgment as to certain United States' claims for cost reimbursement. The United States then filed a motion for partial summary

judgment as to other specific claims for cost reimbursement. The specific costs at issue are limited to those incurred prior to August 1987, as per this Court's Conditional Order of Bifurcation, filed July 26, 1988.

### Background

In the main action, which has been consolidated for pretrial and trial proceedings, plaintiffs, the United States and the State of Michigan, seek recovery under CERCLA of costs expended to clean up and contain the spread of hazardous substances discovered in the Verona Well Field and surrounding areas. The substances had allegedly been released by defendants on three nearby properties and had penetrated the soil, entered the groundwater, and contaminated a substantial number of wells at the Verona Well Field. The Verona Well Field serves as a public water supply for approximately 35,000 residents and businesses of the City of Battle Creek, Michigan. The three properties are: the Raymond Road facility, the Annex, and the Grand Trunk Marshalling Yard.

The complaint alleges that in August 1981, the Michigan Department of Public Health identified 10 of 31 wells at the Verona Well Field that were contaminated with various organic solvents. Since 1981, the United States Environmental Protection Agency (EPA) has undertaken, and continues to undertake, various response actions at and around the Verona Well Field to determine the extent, nature, and source of the contamination and to prevent the further migration of the contamination with the goal of protecting the public health, welfare, and environment. At this time, EPA's costs well exceed 4.5 million dollars. The United States' current motion for summary judgment seeks over $875,-000.

Plaintiffs seek to hold Grand Trunk Western Railroad (Grand Trunk), Thomas Solvent Company (Thomas Solvent), Thomas Development Company (Thomas Development), Richard Thomas, and the offshoot Thomas Solvent companies liable for cleaning up the Raymond Road site. I found Thomas Solvent and Thomas Development

jointly and severally liable for plaintiffs' response costs on December 13, 1989. Plaintiffs and Grand Trunk Western Railroad entered a partial consent agreement on June 5, 1989.

## Appropriate Standard and Scope of Review

The parties request the Court to rule on the appropriate standard and scope of review that the Court will apply in evaluating United States' selection of response actions at or in the vicinity of the Verona Well site. Plaintiff United States argues that its response actions should be reviewed on the basis of the administrative record under an arbitrary and capricious standard. Defendants Grand Trunk, joined by Thomas Solvent and Richard Thomas, argue that because the arbitrary and capricious standard and the provision limiting scope of review to the administrative record were not adopted until the SARA amendments in 1986,[1] they should not apply to administrative decisions made by the Environmental Protection Agency (EPA) in this case in 1983, 1984, and 1985. Should the Court find, however, that the SARA standard and scope of review do apply to the agency actions in this case, defendants argue in the alternative that the SARA provisions should apply only to four specific decisions—those that involve *selection* of the type of response or remedial actions to be taken, but not including those decisions made to *implement* the chosen course of action. The remaining decisions, defendants argue, should be reviewed de novo by the Court under a preponderance of the evidence test.

Declaratory Judgments

None of the movants have expressly requested the Court to make a final declaratory judgment under Federal Rule of Civil Procedure 57 on the issue of the scope and standard of review this Court will apply when evaluating the government's right to reimbursement for costs expended in response to the hazardous waste at the Verona Well Field. Viewing the motions liberally, I may view them as a Rule 57 demand and exercise my discretion to issue a final judgment.[2] However, none of the movants sought declaratory judgment relief in their complaint and the Rule provides explicitly that "[t]he procedure for obtaining a declaratory judgment ... shall be in accordance with these rules." Fed.R.Civ.Proc. 57.

Even if a party does not have to plead declaratory relief for the court to grant such relief, I believe a declaratory judgment is not warranted on this issue. Allowing adversaries a right of action for a declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, "is intended to minimize the danger of avoidable loss and the unnecessary accrual of damages and to afford one threatened with liability an early adjudication without waiting until his adversary should see fit to begin an action after the damage has accrued." Wright, Miller & Kane, *Federal Practice and Procedure* § 2751, at 569 (1983) (footnote omitted). "The court however, in the exercise of the discretion that it always has in determining whether to give a declaratory judgment, properly may refuse declaratory relief if the alternative remedy is better or more effective." *Id.* § 2758, at 621–23 (footnotes omitted); *see also Maryland Casualty Co. v. Faulkner*, 126 F.2d 175, 178 (6th Cir.1942) (court may refuse to issue declaratory judgment if it will not settle rights of parties). In this case, the motions are brought as part of an action in the midst of litigation and the opportunity for minimizing losses has passed. As part of an action for liability and reimbursement, these motions are most expeditiously dealt with by issuing an interlocutory order, not appealable until the Court issues a final judgment on liability and reimbursement.

Statutory Framework

Congress enacted the Comprehensive Environmental Response, Compensation, and

---

1. Superfund Amendments and Reauthorization Act of 1986 (SARA), Pub.L. No. 99–499, 100 Stat. 1613 (1986) (codified at 42 U.S.C. § 9601 *et seq.*).

2. Rule 57 provides that "[t]he existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate." Fed.R.Civ.Proc. 57.

Liability Act (CERCLA), 42 U.S.C. § 9601 *et seq.*, in 1980 to institute a national list of hazardous waste sites, to authorize the Environmental Protection Agency (EPA) to take emergency removal or remedial action in response to the release of hazardous substances, and to provide the funds for such action. "The legislation ... also establish[es] a Federal cause of action in strict liability to enable the Administrator to pursue rapid recovery of the costs ... of such actions undertaken by him from persons liable therefor." Comprehensive Environmental Response, Compensation and Liability Act of 1980, House Report No. 96–1016, at 17, *reprinted in* 1980 *Code Cong. & Admin.News* 6119, 6120.

In order to increase the effectiveness of the legislation, Congress amended CERCLA with the Superfund Amendments and Reauthorization Act of 1986 (SARA).[3] SARA provides national cleanup standards for hazardous waste sites on the National Priority List and enhances the EPA's "response and enforcement authority." Superfund Amendments and Reauthorization Act of 1986, House Report No. 99–253(I), at 54, *reprinted in* 1986 *U.S.Code Cong. & Admin.News* 2835, 2836. Section 9613(j) provides that judicial review concerning the adequacy of any EPA response action must be limited to the administrative record. 42 U.S.C. § 9613(j)(1). "In considering objections raised in any judicial action under this chapter, the court shall uphold the President's[4] decision in selecting the response action unless the objecting party can demonstrate, on the administrative record, that the decision was arbitrary and capricious." *Id.* § 9613(j)(2) (footnote added).

a. *Retroactivity*

█ The general rule in civil cases is that the court should apply the law in effect at the time of rendering its decision. *Bradley v. Richmond School Board,* 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974). The only exceptions to

this rule are if such application would result in "manifest injustice" or is contrary to statutory authority or legislative history. *Id.*

Defendant's argument that section 9613(j) should not be retroactive is that retroactive application is not explicitly provided for in the statute or in the legislative history and would be "manifestly unjust." Grand Trunk's Motion for Declaration of Standard of Review, Feb. 8, 1988, at 9. However, as the government has noted, there is some evidence in the legislative history that the provision was merely clarifying the standard of review previously applied to response reimbursement actions brought under CERCLA prior to the 1986 SARA amendments. *See, e.g., United States v. Northeastern Pharmaceutical & Chemical Co.,* 810 F.2d 726, 748 (8th Cir. 1986); *United States v. Ward,* 618 F.Supp. 884, 900 (E.D.N.C.1985).

Since SARA was enacted, apparent conflict exists among the courts regarding retroactive application. *Compare, e.g., United States v. R.W. Meyer,* 889 F.2d 1497, 1506 (6th Cir.1989); *United States v. Seymour Recycling Corp.,* 679 F.Supp. 859 (S.D.Ind.1987); *United States v. Rohm and Haas Co., Inc.,* 669 F.Supp. 672 (D.N.J.1987), *with, e.g., United States v. Ottati & Goss, Inc.,* 900 F.2d 429, 433 (1st Cir.1990); *United States v. Hardage,* 663 F.Supp. 1280, 1283 (1987). However, those courts that have determined that SARA should not be applied retroactively have done so only under section 7003 that relates to court review of requests for mandatory injunctive relief, which traditionally are subject to de novo review with full discovery.

The issues here do not involve injunctive relief, but rather a review of costs expended for response actions. The Sixth Circuit's rationale and holding in *Meyer,* 889 F.2d at 1506, in which it addressed the retroactivity of the prejudgment interest provision, is controlling. Because of the

---

**3.** Pub.L. No. 99–499, 100 Stat. 1613 (1986).

**4.** The President has delegated most of his authority under CERCLA and SARA to the Administrator of the EPA. *See* Executive Order No.

12,580, 52 Fed.Reg. 2923 (Jan. 23, 1987), *reprinted in* 42 U.S.C. § 9615 App. at 179–83 (West Supp.1990).

court's view of "SARA as reauthorizing and clarifying the congressional intent underlying CERCLA, because of CERCLA's retroactive application, and because of the broad remedial purposes underlying CERCLA and SARA," it concluded that Congress did not intend SARA's provisions only to have prospective effect. *Id.* Defendants have not shown in any specific way how manifest injustice would result from retroactive application of the amendment. Thus, there is no reason for this Court not to apply section 9613 as the law currently in effect.

b. *Scope of § 9613(j)*

■ The next issue is what constitutes the administrative record. Defendant appears to presume that United States is arguing that only the "Records of Decision" constitutes the administrative record. However, United States concedes that the Records of Decision merely memorializes the agency's selection of a response action. The actual administrative records reflecting the investigation and selection of the response actions undertaken at the Verona Well Field and the surrounding area consist of more than 40 volumes. I find that the administrative record referred to in section 9613 consists of the full 40 volumes.

Defendants argue that if section 9613 does have retroactive application, its scope must be limited in a number of ways: 1) section 9613 applies only to "selection" responses, as opposed to the day-to-day ministerial decisions implementing the selected courses of action, which are reviewed by de novo review; 2) where the administrative record is inadequate or incomplete, de novo review is required; and 3) where there are procedural errors, de novo review is required.

Defendants' contention that section 9613 applies only to selection or discretionary responses is without merit. Neither the language of the statute nor the legislative history indicate such a limitation. Section 9613 provides in relevant part: "[J]udicial review of any issues concerning the adequacy of any response action taken or ordered ... shall be limited to the administra-

tive record." 42 U.S.C. § 9613(j)(1). As the government points out, the wording of the statute is that the response *taken* will be reviewed—not the response chosen. Thus, it was the intent of Congress that in general, the court should limit its review of the implementation choice to the administrative record.

There are no cases discussing the discretionary vs. ministerial decision distinction under CERCLA or SARA, but in other contexts, the administrative record should be supplemented only if there is a showing of "bad faith or improper behavior" or if "the bare record does not disclose the factors" considered or that should have been considered in the decision-making process. *Citizens To Preserve Overton Park v. Volpe,* 401 U.S. 402, 420, 91 S.Ct. 814, 825, 28 L.Ed.2d 136 (1971). Defendants argue that the record will not disclose the public concerns that should be included in agency decisions having such a significant impact on public welfare. Such a blanket accusation, however, can hold no weight as to the adequacy of the entire record.

■ Accordingly, this Court will adopt the standard and scope of review prescribed in section 9613(j) of SARA, as sought by United States. Response actions taken by the EPA shall be reviewed on the administrative record and upheld unless shown on the administrative record to be arbitrary and capricious. I will address defendants' specific objections to the adequacy of the record and the propriety of the procedural steps followed as I review the particular response costs sought by the government.

*Partial Summary Judgment on Costs*

Plaintiff United States seeks a motion for partial summary judgment on certain response costs claimed pursuant to section 9607(a) of CERCLA, 42 U.S.C. § 9607(a), against defendants Thomas Solvent Co., Richard Thomas, Thomas Development Corp., Thomas Solvent of Muskegon, Inc., Thomas Solvent of Detroit, Inc., Thomas Solvent Inc., of Indiana, and TSC Transportation, Inc. United States seeks costs to-

talling $877,704.78 along with a determination that defendants must pay prejudgment interest. Defendants, Thomas Solvent and Richard Thomas move for summary judgment in their favor on some of the same response costs and others.

Standard of Review for Summary Judgment

In reviewing a motion for summary judgment, this Court should only consider the narrow questions of whether there are "no genuine issues as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." Fed.R.Civ. Proc. 56(c). On a Rule 56 motion, the Court cannot try issues of fact, but is empowered to determine only whether there are issues in dispute to be decided in a trial on the merits. *Gutierrez v. Lynch,* 826 F.2d 1534, 1536 (6th Cir.1987); *In re Atlas Concrete Pipe, Inc.,* 668 F.2d 905, 908 (6th Cir.1982). The crux of the motion is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986); *see Booker v. Brown & Williamson Tobacco Co., Inc.,* 879 F.2d 1304, 1310 (6th Cir.1989).

A motion for summary judgment requires this Court to view " 'inferences to be drawn from the underlying facts ... in the light most favorable to the party opposing the motion.' " *Matsushita Electric Ind. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)), *quoted in Historic Preservation Guild of Bay View v. Burnley,* 896 F.2d 985, 993 (6th Cir.1989). The opponent, however, has the burden to show that a "rational trier of fact [could] find for the non-moving party [or] that there is a *'genuine issue for trial.'* " *Historic Preservation,* 896 F.2d at 993 (quoting *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356).

As the Sixth Circuit has recognized and heartily supported, recent Supreme Court decisions have encouraged the granting of summary judgments. *Historic Preservation,* 896 F.2d at 993 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The Courts have noted that the summary judgment motion may be an "appropriate avenue for the 'just, speedy and inexpensive determination' of a matter." *Cloverdale Equipment Co. v. Simon Aerials, Inc.,* 869 F.2d 934, 937 (6th Cir.1989) (quoting *Celotex,* 477 U.S. at 327, 106 S.Ct. at 2555). Consistent with the concern for judicial economy, "the mere existence of a scintilla of evidence in support of the [non-moving party's] positions will be insufficient." *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512. "Mere allegations do not suffice." *Cloverdale,* 869 F.2d at 937. "[T]he party with the burden of proof at trial is obligated to provide concrete evidence supporting its claims and establishing the existence of a genuine issue of fact." *Id.*

Statutory Standard for Response Actions and Cost Reimbursement

Section 9604 authorizes the President to respond to a release or threatened release of a hazardous substance into the environment by taking removal or remedial actions consistent with the national contingency plan (NCP). 42 U.S.C. § 9604(a)(1). "Respond or response" includes "removal, remedy and remedial action." 42 U.S.C. § 9601(25). "Removal" includes cleanup as well as necessary actions to "monitor, assess and evaluate" and to "prevent, minimize, or mitigate damage to the public health or welfare or to the environment." *Id.* § 9601(23). "Remedial action" or "remedy" refers to "those actions consistent with permanent remedy taken ... to prevent or minimize the release of hazardous substances so that they do not migrate to cause substantial danger to present or future public health or welfare or the environment." *Id.* § 9601(24). The Sixth Circuit has summarized the government's powers under CERCLA, as amended by SARA, as such: "Essentially, Congress has authorized the government to utilize Superfund money to take direct response actions

that are consistent with the NCP and to recover *all* response costs from all persons responsible for the release of a hazardous substance." *United States v. R.W. Meyer, Inc.*, 889 F.2d 1497, 1500 (6th Cir.1989) (citing 42 U.S.C. § 9607(a)) (emphasis in original). The responsible parties bear the burden of demonstrating that the costs sought are inconsistent with the NCP. *Id.* at 1508. Thus, as the parties bearing the burden of proof in this case, defendants must demonstrate that there are genuine issues of fact as to the costs sought in order to defeat United States' motion for summary judgment. Defendants must show that there are issues of fact about whether "the EPA's decision to incur the challenged costs was 'arbitrary and capricious.'" *Id.* I am well aware that this is a very high standard and must presume that Congress wisely balanced the risks when it granted to the executive branch such broad discretion in responding to hazardous waste contamination.

United States' Motion for Summary Judgment

United States has asked for summary judgment as to 16 separate cost items, totalling $877,704.78, that it alleges are part of its response costs reimbursable under CERCLA and SARA. Defendants only object to three of the cost items explicitly (items five, six, and fifteen) and also argue that United States has no right to prejudgment interest on costs incurred.

Defendants argue extensively about the importance of providing the full administrative record to the Court for its reference in determining the cost issues in these motions. United States filed the full record with the Court. However, none of the movants have given page references to the administrative record. Rather, all parties have relied on depositions, affidavits, and some attached documents. The administrative record consists of about 40 volumes. I must presume that if there were a golden needle in this haystack, the parties would have guided me to it. Without such guid-

ance, I rely on the parties' documents referred to specifically and attached to their briefs.

1) Carbon Treatment Contract with Pedco Environmental, Inc.

As part of its Initial Remedial Measure, the United States undertook measures to block the spread of contamination in the Verona Well Field. It contracted with Pedco, under the national Emergency Response Contacting System (NARCS) contract, to perform some of the services it deemed necessary to halt the spread. Defendants object to that part of the Pedco contract that was associated with the carbon treatment system.[5] Defendants' argument is based on two theories.

■ First, defendants argue that the contract violated 41 U.S.C. § 252, which imposes a competitive bidding requirement for federal contracts unless exigent circumstances exist. The Pedco contract, like others made as part of the ERCS contract, was not obtained by competitive bidding and defendants argue that exigent circumstances did not require the specific services that Pedco provided. Second, defendants argue that the carbon treatment services provided by Pedco were not "cost-effective, reasonable or consistent with the NCP." Brief of Defendants Thomas Solvent Company and Richard Thomas in Response to United States' Motion for Partial Summary Judgment, Dec. 2, 1988, at 11.

I assume that defendants only object to the carbon treatment services portion of the contract because those are the only services that they contend were not immediately required. The government responds that the contract was legal as part of the EPA approved ERCS contract. The EPA had determined advertising was not "feasible or practicable" for these procurement services because "the nature of the requirement makes it impossible to draft for an invitation for bids adequate specifications or any other adequately detailed

---

5. Defendants seem to argue that Pedco performed the carbon treatment services under the ERCS contract and thus object to the total contract price which they contend was $536,153.20.

Plaintiff claims that contract price was $475,627.90 and that it involved other services as well.

description" of the services required. Reply Memorandum of the United States in Support of Motion for Partial Summary Judgment on Cost Issues, Dec. 27, 1988, at 8–9, n. 3. Thus, the EPA procured the ERCS contract according to Request for Proposal requirements of 41 U.S.C. §§ 253 and 254. Memorandum of the United States in Opposition to Motion of Thomas Solvent Company for Partial Summary Judgment on Cost Issues, Dec. 12, 1988, at 24–25. Defendants did not rebut the government's contention that the contract was procured legally under the Request for Proposal requirements. Even if it weren't, however, defendants have not come forth with evidence showing a lack of exigent circumstances. Thus, I find that United States did not act arbitrarily or capriciously in deciding to forego competitive bidding for the Pedco contract.

■ Defendants' expert testified that he believes the carbon treatment services were "unreasonable" because other effective alternatives were available at the time and the carbon treatment units "did not provide any meaningful health benefit and should not have been used." Roy Ball Deposition, Oct. 29, 1987, at 28–29, 33–35. The expert discussed his rationale in some detail, the scientific basis for which I cannot assess, but it seems evident that he was not basing his conclusions merely on findings gained from hindsight. His opinion is that even under those dangerous circumstances, at that time, the government's response action was not reasonable. However, he admits that "the use of granular carbon to treat contaminated water is certainly not fundamentally irrational." *Id.* at 44.

Unreasonable action or decision-making is not necessarily arbitrary and capricious, but it may be if undertaken with no thought for or research of the effectiveness, other available alternatives, and the consequences. It is undisputed that this carbon treatment system was merely a temporary measure undertaken for a few months until the final decision was made about which remedial measure to select and implement. United States argues in part that the ultimate success of the remedial measure justifies the choice of the temporary measure. Reply Memorandum of the United States in Support of Motion for Partial Summary Judgment on Cost Issues, Dec. 27, 1988, at 10. This justification alone is inadequate to rebut defendants' charge that the choice of the temporary measure was unreasonable. However, United States also provides expert testimony that the choice of and installation of the carbon treatment units was reasonable because they were necessary and successful in blocking the spread of contamination while the final remedial response action was selected. Affidavit of Jonas Dikinis, E.S.E. 73. The government contends that it was faced with the risk of losing the Well Field altogether and that the carbon units were successful in treating the purged water. Memorandum of the United States In Opposition to Motion of Thomas Solvent Company for Partial summary Judgment on cost Issues, Dec. 12, 1988, at 13–14.

The government does not have to prove the reasonableness of its response actions. Defendants have to provide concrete evidence that raise a genuine issue of fact as to whether the actions were arbitrary and capricious. Defendants have not fulfilled this burden. I find that defendants have not demonstrated a genuine issue of fact as to whether the carbon treatment services portion of the Pedco contract was arbitrary and capricious. The fact that the carbon units may not have been the best choice or, viewing their expert's testimony in its most favorable light, the fact that the units were not successful, does not mean that they were installed arbitrarily or capriciously with no thought as to their effectiveness.

2) Technical Assistance Team Contract with Weston, Inc.

■ United States seeks summary judgment as to costs expended to provide technical and field oversight assistance of the blocking well operation at the Verona Well Field between 1984 and 1987. The carbon treatment units, as discussed above, were a temporary measure instituted as part of this operation for a relatively short time

until the air stripper could be constructed. Defendants argue that the technical assistance team costs for supervising the carbon treatment units were unreasonable and unnecessary insofar as the carbon treatment units themselves were unreasonable. Given my finding that defendants have not satisfied their burden as to the carbon units, I find that they have not satisfied their burden of showing that the response actions giving rise to these costs were arbitrary and capricious.

### 3) Travel Costs

United States seeks reimbursement for the travel costs necessitated by the needs for EPA monitoring, assessment, and oversight. Defendants contest these costs in so far as they relate to expenses involved with the carbon treatment units. Again, I find that defendants have not satisfied their burden of demonstrating a genuine issue of fact.

### 4) Prejudgment Costs

In addition to the response costs incurred, United States seeks prejudgment interest on its costs. Defendants' argument is that CERCLA did not provide for prejudgment interest and the SARA provision for prejudgment interest should not apply retroactively to the response costs in this case. As discussed above, I find that SARA amendments apply retroactively to the response costs in this case. *United States v. Meyer, Inc.*, 889 F.2d 1497, 1506 (6th Cir.1989).

Section 9607 provides that recovery of costs shall include prejudgment interest from "the later of: i) the date payment of a specified amount is demanded in writing, or ii) the date of the expenditure concerned." 42 U.S.C. § 9607(a)(4). I hold that defendants are liable for prejudgment interest as provided for in SARA.

### 5) Costs Not Objected To

United States has moved for summary judgment on numerous other response costs claimed in its complaint and defendants have not responded at all. I grant summary judgment as to those costs to United States because defendants have come forth with not even a scintilla of evidence raising a genuine issue of fact.

### *Defendants' Motion for Summary Judgment*

Defendants contest in their summary judgment motion costs other than those claimed by the United States in its motion. I will address those costs here.

### 1) Indirect Costs

■ Defendant argues that CERCLA only provides for cost reimbursement of removal, remedial, or enforcement costs related to a specific site. They contend that costs related to the general operation of the program, including expenses for rent, utilities, administrative offices, personnel, supplies, and equipment, constitute indirect costs for which no right of reimbursement is provided. This proposition has not been upheld by the courts. The Sixth Circuit has ruled that "indirect costs are part and parcel of all costs of the removal action." *Meyer*, 889 F.2d at 1502–03; *accord United States v. Ottati & Goss, Inc.*, 900 F.2d 429, 444–45 (1st Cir.1990). In so far as the indirect costs are attributable to the overhead expenses needed to support the government's cleanup of the Verona Well Field and surrounding areas, they are reimbursable under CERCLA. I find that as a matter of law, defendants' motion as to the United States' claim for indirect costs is denied.

### 2) Double–Lined Pipe

■ Defendants argue that because United States elected not to use a double-lined pipe, in opposition to the State of Michigan, plaintiff should not be allowed reimbursement for the cost of its installation.[6] United States has conceded this

---

6. The State of Michigan has submitted a brief arguing in part that reimbursement for the cost of the double-lined pipe itself is proper because the pipe was not inconsistent with the NCP. I do not reach this issue today because it is not part of defendants' motion. The issue at hand is the cost of installation only.

point and asserts that it has subtracted the cost of installation from the reimbursement it seeks. Defendants contend United States should have subtracted more because the amount subtracted was based on an estimate that did not include design, cost overruns, supervision, and management of the double-lined pipe project, which defendants contend was borne by United States. Defendants' Reply to United States Opposition to Defendants Richard Thomas and Thomas Solvent Company's Motion for Summary Judgment on Cost Issues, Dec. 23, 1988, at 7–9. United States argues that it incurred no additional costs from the installation of a double-lined pipe as opposed to a single pipe. Memorandum of the United States in Opposition to Motion of Thomas Solvent Company for Partial Summary Judgment on Cost Issues, Dec. 12, 1988, at 19–23. Defendant has proffered no evidence that United States' determination of the amount to be deducted was arbitrary or capricious. United States determined with its experts the incremental difference between manufacturing and installing a double-lined pipe and a single pipe and charged that difference to Michigan. In deciding which type of pipe to use, it seems reasonable that the government would look at the various designs available. As a result, I find that the government has raised a genuine issue as to material fact as to defendants' claim for additional deductions for the cost of the double-lined pipe.

### 3) Carbon Treatment System Costs for Raymond Road Site

Defendants raise essentially the same argument they did regarding the carbon treatment system costs at the Verona Well Field, as discussed above. They contend that the carbon treatment system installed at the Raymond Road site was unreasonable because it was ineffective. United States again presents reasonable grounds for instituting this system and thereby rais-

es a genuine issue of fact. I thus deny defendants' motion on this claim.

### 4) Non–Well Field Expansion Costs for Initial Remedial Measure

■ Defendants seek summary judgment as to costs expended for the use of purge wells and the installation of a barrier system at the Verona Well Field because their expert contends that these actions resulted in the spread of contamination. Ball Deposition, Oct. 29, 1987, at 28–29, 33–35. United States provides reasons for its choice of the Initial Remedial Measure, supported by its expert in technical detail. Dikinis Affidavit, E.S.E. 73. Factors influencing its decision were: imminent risk of the entire well field being jeopardized and not being able to meet the city's water demand. I find that the government has raised issues of fact as to this claim as well and thus deny defendants' motion for summary judgment denying these costs.

### CONCLUSION

United States' motion for a ruling as to the appropriate standard and scope of review of agency action is granted in accordance with its view of the law. Defendants' motion for a declaration of standard of review is denied. United States' motion for summary judgment on response costs valued at $877,704.78 is granted. Defendants Thomas Solvent and Richard Thomas's motion for partial summary judgment on United States' claims for cost reimbursement is denied.