**ATLANTIC RICHFIELD COMPANY,**
Plaintiff–Appellee/Cross–
Appellant,

v.

**AMERICAN AIRLINES, INC., Baker Hughes Incorporated, Borgwarner Corporation, Burgessnorton Mfg. Co., Chief Chemical & Supply, Inc., Cintas Corporation, Inc., Crane Carrier Corp., Dover Corporation, Groendyke Transport, Inc., Jerry Inman Trucking, Inc., Kansas Industrial Environmental Services, Inc., McDonnell Douglas Corporation, MK & O Coach Lines, Paccar, Inc., Phillips Petroleum Company, Ramsey Winch Company, Ryder Truck Rental, Inc., The Uniroyal Goodrich Tire Company, Webco Industries, Whirlpool Corporation, (Group I Defendants), Sand Springs Home, Container Products of Oklahoma, Defendants–Appellants/Cross-Appellees,**

United States of America, Amicus Curiae.

Nos. 94–5061, 94–5062, 94–5079 and 94–5099.

United States Court of Appeals,
Tenth Circuit.

Oct. 16, 1996.

Claire V. Eagan (Michael D. Graves and Susan L. Gates with her on the brief), of Hall, Estill, Hardwick, Gable, Golden & Nel-son P.C., Tulsa, OK, for appellants/cross-appellees.

James M. Harris (Larry G. Gutterridge and Alan Au with him on the brief), of Sidley & Austin, Los Angeles, CA, for appellee/cross-appellant.

Lois J. Schiffer, Assistant Attorney General; David C. Shilton and John T. Stahr, Department of Justice, Environment and Natural Resources Division; and Charles Openchowski, Office of General Counsel, United States Environmental Protection Agency, for amicus curiae.

Before HENRY, SETH,* and BRISCOE, Circuit Judges.

BRISCOE, Circuit Judge.

Atlantic Richfield Co. (ARCO), one of several parties responsible for a hazardous waste site, settled a lawsuit brought by the Environmental Protection Agency (EPA) and then brought these consolidated contribution actions against other responsible parties to recover a share of the cleanup costs under § 113(f) of the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. §§ 9601–9657. Several defendants appeal the district court's judgment that ARCO is entitled to contribution for the money it must pay to the EPA for that agency's oversight of the cleanup and for attorney fees incurred in negotiating the consent decree with the EPA. ARCO cross-appeals the court's failure to award ARCO attorney fees incurred in locating potentially responsible parties, and the court's apportionment of fees paid to the settlement judge.

We affirm the district court's ruling that ARCO is entitled to recover for its payment of the EPA's oversight costs, but reverse the judgment allowing recovery of attorney fees incurred by ARCO in negotiating the consent decree. On the cross-appeal, we affirm the district court's ruling on attorney fees and the court's apportionment of the fees paid to the settlement judge.

---

* The late Honorable Oliver Seth heard oral argument in this case but did not participate in the final decision.

## Facts

The hazardous waste site that is the subject of this appeal is a 6.2 acre tract near Tulsa, Oklahoma, known as the Glenn Wynn site. It is part of a larger tract that was the site of a Sinclair Refining Company refinery until 1952. ARCO acquired a portion of the refinery site in a merger with Sinclair in 1969, and sold it in 1987. The Glenn Wynn site was leased to a waste oil reclamation business from 1964 through mid–1982, and defendants-appellants are among the parties who generated waste materials that were delivered to the site during that time.

In 1986, the EPA identified the entire refinery site as a Superfund site under CERCLA and placed it on the National Priorities List. The EPA and the Oklahoma State Department of Health conducted a Remedial Investigation and Feasibility Study, after which the EPA issued a Record of Decision requiring excavation and off-site thermal destruction of sludges from the Glenn Wynn site, and stabilization and solidification of sludges from the rest of the refinery site.

The EPA and ARCO negotiated a consent decree, which was filed in May 1989, under which ARCO agreed to implement the entire remedy for the Glenn Wynn site subject to oversight by the EPA, to pay the costs incurred by the EPA in response to the site contamination, and to pay for the EPA's future oversight of ARCO's implementation of the remedy. The sludge at the Glenn Wynn site was cleaned up to the EPA's satisfaction by June 1993.

ARCO brought these consolidated contribution actions to recover from other responsible parties a share of the costs it incurred in cleaning up the Glenn Wynn site. Among the defendants were appellants, companies whose waste oil was delivered to the Glenn Wynn site and who were designated as Group I.[1] The Group I defendants include the following: Baker Hughes Incorporated; Borg–Warner Corporation; Burgess–Norton Manufacturing Co. (a Division of Amsted Industries Incorporated); Chief Supply Corporation (sued as Chief Chemical Supply and Chief Chemical & Supply, Inc.); Crane Carrier Corp.; Dover Corporation; Groendyke Transport, Inc.; H.W. Allen Co., f/k/a MK & O Coach Lines; Jerry Inman Trucking, Inc.; Kansas Industrial Environmental Services, Inc.; McDonnell Douglas Corporation; Paccar, Inc.; Phillips Petroleum Company; Ramsey Winch Company; Ryder Truck Rental, Inc. (for itself and as successor to Wilco Truck); The Uniroyal Goodrich Tire Company; Webco Industries, Inc.; and Whirlpool Corporation. Appellants stipulated to liability for their proportionate share of the costs of cleaning up the site, but contended some of the costs sought by ARCO were not recoverable under CERCLA.

Appellants moved for summary judgment, contending ARCO was not entitled to recover its attorney fees and the costs of EPA oversight of the cleanup. The district court ruled that ARCO could not recover attorney fees incurred in the litigation, but could recover any nonlitigation attorney fees that were necessary to the cleanup. The court also ruled that whether ARCO could recover the EPA oversight costs it was obligated to pay under the consent decree was a question of fact.

After trial, the district court found ARCO had incurred $9,007,069.56 in reasonable and necessary costs of response for the Glenn Wynn site. This sum included nonlitigation attorney fees in the amount of $29,108.60 and the costs of EPA oversight of ARCO's cleanup in the amount of $420,765, but did not include litigation attorney fees. The court also found ARCO was entitled to prejudgment interest of $155,943. However, the court did not enter a money judgment in favor of ARCO because it had received $9,607,744.16 in settlements with defendants other than appellants. The court ruled appellants would be liable for 90% of any future costs beyond the overage, less credits for remediation costs already paid by four defendants, and that ARCO would be liable for the remaining 10%.

1. In the district court, the defendants in these consolidated actions were divided into five groups, defendant Groups I–V, based upon common facts, claims, and defenses. The Group I defendants are appellants in the present appeal.

### EPA Oversight Costs

■ Appellants contend the district court erred in ruling that ARCO was entitled to contribution for the money it must pay to the EPA for the agency's oversight of ARCO's cleanup of the site. Relying on *United States v. Rohm & Haas Co.,* 2 F.3d 1265 (3d Cir.1993), they argue the costs of EPA oversight of a private party cleanup are not costs for which they can be held liable under § 107(a) of CERCLA, and are therefore not recoverable by ARCO under § 113(f). We disagree.

Under CERCLA, the government may either conduct cleanups itself or permit or require responsible parties to do so. CERCLA §§ 104(a) and 106 (42 U.S.C. §§ 9604(a) and 9606). Liability for costs incurred by the government or a private party in cleaning up a site is imposed by § 107(a)(4) (42 U.S.C. § 9607(a)(4)), which provides responsible parties are liable for "(A) all costs of removal or remedial action incurred by the United States government or a State or an Indian tribe not inconsistent with the national contingency plan; [and] (B) any other necessary costs of response incurred by any other person consistent with the national contingency plan." Under § 113(f) (42 U.S.C. § 9613(f)), "[a]ny person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title."

The terms "response," "removal," and "remedial action" are defined in CERCLA § 101(42 U.S.C. § 9601). Responses consist of removals and remedial actions and "enforcement activities related thereto." CERCLA § 101(25). In general, a "removal" is a short-term response and a "remedial action" is a long term response. *See* CERCLA § 101(23) and (24); *Daigle v. Shell Oil Co.,* 972 F.2d 1527, 1533–34 (10th Cir.1992). Under § 113(f), ARCO can recover a share of the EPA oversight costs it must pay under the consent decree only if those costs are costs of removal or remedial action for which responsible parties are liable under § 107.

In *Rohm & Haas,* the court held costs incurred by the EPA in overseeing a private party cleanup were not costs of removal and could not be recovered under § 107(a). 2 F.3d at 1271. The court based its conclusion

that government oversight of a private party removal is not a removal action largely on *National Cable Television Ass'n v. United States,* 415 U.S. 336, 94 S.Ct. 1146, 39 L.Ed.2d 370 (1974), as explained in *Skinner v. Mid–America Pipeline Co.,* 490 U.S. 212, 109 S.Ct. 1726, 104 L.Ed.2d 250 (1989). *Rohm & Haas,* 2 F.3d at 1273. In *Skinner,* 490 U.S. at 224, 109 S.Ct. at 1734, the Supreme Court stated: "Congress must indicate clearly its intention to delegate to the Executive the discretionary authority to recover administrative costs not inuring directly to the benefit of regulated parties by imposing additional financial burdens, whether characterized as 'fees' or 'taxes' on those parties."

In *Rohm & Haas,* the court concluded the costs incurred by the government in monitoring a private party's cleanup were administrative costs not inuring directly to the benefit of that party, but rather to the benefit of the public at large. 2 F.3d at 1273. Accordingly, the court stated:

We will not presume Congress to have intended a statute to create the dramatic and unusual effect of requiring regulated parties to pay a large share of the administrative costs incurred by the overseeing agency unless the statutory language clearly and explicitly requires that result. Thus, EPA can only prevail if the statutory definition of removal unambiguously allows for the government to recover the oversight costs it here seeks.

2 F.3d at 1274. The court found no clear expression of intent to delegate to the EPA the authority to recover those costs in the statutory definition of removal, or elsewhere in CERCLA. 2 F.3d at 1275–78. Removal is defined as:

the cleanup or removal of released hazardous substances from the environment, such actions as may be necessary taken in the event of the threat of release of hazardous substances into the environment, such actions as may be necessary to monitor, assess, and evaluate the release or threat of release of hazardous substances, the disposal of removed material, or the taking of such other actions as may be necessary to prevent, minimize, or mitigate damage to

the public health or welfare or to the environment, which may otherwise result from a release or threat of release. The term includes ... action taken under section 9604(b) of this title.

CERCLA § 101(23) (42 U.S.C. § 9601(23)). The court reasoned the monitoring referred to in § 101(23) is monitoring of the release or threatened release itself rather than oversight of monitoring and assessment activities of others. 2 F.3d at 1276.

*Rohm & Haas* departed significantly from prior case law that had construed the cost recovery provisions of CERCLA broadly. In *New York v. Shore Realty Corp.*, 759 F.2d 1032, 1043 (2d Cir.1985), the only pre-*Rohm & Haas* case addressing government oversight of a private party cleanup, the court stated the state government's costs incurred in assessing the conditions of a site and in supervising removal of the waste by a private party "squarely fall within CERCLA's definition of response costs, even though the State is not undertaking to do the removal." A number of courts held the EPA can recover administrative and indirect costs associated with a government cleanup under § 107. *See, e.g., United States v. Ottati & Goss*, 900 F.2d 429, 444 (1st Cir.1990); *United States v. R.W. Meyer*, 889 F.2d 1497, 1504 (6th Cir. 1989), *cert. denied* 494 U.S. 1057, 110 S.Ct. 1527, 108 L.Ed.2d 767 (1990); *Kelley v. Thomas Solvent Co.*, 790 F.Supp. 719, 729 (W.D.Mich.1990); *United States v. Hardage*, 733 F.Supp. 1424, 1438–39 (W.D.Okla.1989), *aff'd in part and rev'd in part on other grounds*, 982 F.2d 1436 (10th Cir.1992), *cert. denied*, 510 U.S. 913, 114 S.Ct. 300, 126 L.Ed.2d 248 (1993).

No other circuit has addressed the recoverability of the costs of government oversight of private party cleanups since *Rohm & Haas*. Most of the district courts outside the Third Circuit that have addressed the issue have rejected *Rohm & Haas*. *See Town of New Windsor v. Tesa Tuck*, 935 F.Supp. 317, 324–27 (S.D.N.Y.1996); *California v. Celtor Chemical Corp.*, 901 F.Supp. 1481, 1489–90 (N.D.Cal.1995); *United States v. Ekotek*, 1995 WL 580079, *4–5 (D.Utah Sept.11, 1995); *California Dept. of Toxic Substances Control v. SnyderGeneral Corp.*, 876 F.Supp.

222, 225 (E.D.Cal.1994); *United States v. Lowe*, 864 F.Supp. 628, 631–32 (S.D.Tex. 1994). *See also Colorado v. United States*, 867 F.Supp. 948, 953 (D.Colo.1994). *But see Bancamerica Commercial Corp. v. Trinity Industries*, 900 F.Supp. 1427, 1466–67 (D.Kan.1995); *County of Santa Clara v. Meyers Industries*, 1994 U.S.Dist. LEXIS 9847, *4–9 (N.D.Cal.1994); *Central Maine Power Co. v. F.J. O'Connor Co.*, 838 F.Supp. 641 (D.Me.1993) (following *Rohm & Haas*). The validity of the Third Circuit's analysis of *National Cable* and CERCLA is the subject of debate in the law reviews. *See, e.g.*, Patrick M. Flynn, Comment, *Government Recovery of Superfund Cleanup Oversight Costs: a Critique of United States v. Rohm & Haas Co.*, 47 Rutgers L.Rev. 789 (1995) (criticizing *Rohm & Haas*); Karyn M. Schmidt, *Rohm & Haas Was Right: Recovery of Government Oversight Costs in Private Party Response Actions*, 19 Wm. & Mary Envtl. L. & Pol'y. Rev. 253 (1995).

Whether the Third Circuit's application of the *National Cable/Skinner* analysis to EPA oversight costs under CERCLA in *Rohm & Haas* is correct is questionable. CERCLA response costs are not user fees or taxes, but payments by responsible parties in restitution for cleanup costs. EPA oversight costs are not fees or taxes levied against innocent members of a regulated industry to pay the EPA's general administrative costs, but part of the damages caused or contributed to by specific persons. *See Town of Windsor*, 935 F.Supp. 317, 325–27; *Ekotek*, 1995 WL 580079 at *6.

However, *Rohm & Haas* resolved a different issue than the one presented in this case. The court in *Rohm & Haas* held only that government oversight of private party *removal* actions as defined in § 101(23) was not a removal action whose costs could be recovered under § 107(a). The court in *Rohm & Haas* analyzed only the definition of removal, and did not consider or cite the broader definition of remedial action.

Here, only *remedial action* as defined in § 101(24) is at issue. The consent decree required ARCO to conduct remedial action, and the oversight costs it required ARCO to pay were those incurred in overseeing that

remedial action. The decree also required ARCO to pay response costs already incurred by the government, but none of those costs are identified as costs of overseeing removal action. The only government oversight costs ARCO seeks are the costs of overseeing the remedial action.

We need not decide whether the Third Circuit's application of *National Cable/Skinner* to CERCLA in *Rohm & Haas* was correct because the statutory definition of remedial action and response in § 101(24) and (25) satisfies the *National Cable/Skinner* delegation standard as interpreted by *Rohm & Haas.* The statutory definitions of remedial action and response unambiguously allow recovery of the costs of government oversight of private party remedial actions under § 107(a). Those definitions provide the clear and explicit indication of Congressional intent required by the *National Cable/Skinner* standard as interpreted in *Rohm & Haas.*

In construing a statute, a reviewing court must look first to the statutory language. If the language is clear and unambiguous, judicial inquiry is at an end in all but the most extraordinary circumstances, and the court must give effect to the clear meaning of the statute as written. *Estate of Cowart v. Nicklos Drilling Co.,* 505 U.S. 469, 475, 112 S.Ct. 2589, 2594, 120 L.Ed.2d 379 (1992).

Under § 113(f), ARCO is entitled to seek contribution from any other person who is liable under § 107(a). The cost recovery provisions of § 107 are broad. Section 107(a)(4)(A) expressly provides that responsible parties are liable for *all* costs of removal or remedial actions incurred by the government not inconsistent with the national contingency plan. *United States v. Hardage,* 982 F.2d 1436, 1441 (10th Cir.1992), *cert. denied* 510 U.S. 913, 114 S.Ct. 300, 126 L.Ed.2d 248 (1993). Under § 107(a)(4)(B), responsible parties are liable for *any* other necessary cost of response incurred by any other person consistent with the national contingency plan.

CERCLA § 101(24) (42 U.S.C. § 9601(24)) defines "remedial action" as

those actions consistent with permanent remedy taken instead of or in addition to removal actions in the event of a release or threatened release of a hazardous substance into the environment, to prevent or minimize the release of hazardous substances so that they do not migrate to cause substantial danger to present or future public health or welfare or the environment. The term includes, but is not limited to, such actions at the location of the release as storage, confinement, perimeter protection using dikes, trenches, or ditches, clay cover, neutralization, cleanup of released hazardous substances and associated contaminated materials, recycling or reuse, diversion, destruction, segregation of reactive wastes, dredging or excavations, repair or replacement of leaking containers, collections of leachate and runoff, onsite treatment or incineration, provision of alternative water supplies, *and any monitoring reasonably required to assure that such actions protect the public health and welfare and the environment.*

(Emphasis added.) "Monitoring" is not defined in CERCLA. A term not defined in a statute must be construed in accordance with its ordinary and natural meaning. *United States v. Alvarez–Sanchez,* 511 U.S. 350, ——, 114 S.Ct. 1599, 1603, 128 L.Ed.2d 319 (1994). The verb "monitor" is generally synonymous with audit, check, control, inspect, investigate, observe, *oversee,* regulate, review, scrutinize, study, survey, test and watch. *See* William C. Burton, Legal Thesaurus 337; Webster's Third New International Dictionary 1460 (Philip B. Gove, ed.1993).

Statutory language should be read in its statutory context. *See Brown v. Gardner,* —— U.S. ——, ——, 115 S.Ct. 552, 555, 130 L.Ed.2d 462 (1994); *Resolution Trust Corp. v. Love,* 36 F.3d 972, 976 (10th Cir.1994). The monitoring referred to in § 101(24) necessarily includes government oversight of private party remedial actions. Under CERCLA, remedial actions may be taken either by private parties or the government, and § 101(24) does not distinguish between private party and government actions. Government monitoring or oversight is an inherent and necessary part of private party remedial action. CERCLA § 111(c)(8) (42 U.S.C. § 9611(c)(8)) clearly contemplates

that the government must monitor private party remedial actions. CERCLA § 122(f)(3) and (5) (42 U.S.C. § 9622(f)(3) and (5)) require government monitoring of private party remedial actions; covenants not to sue in consent decrees permitting private parties to perform response actions are not effective until the President certifies that remedial action has been completed in accordance with CERCLA requirements. Government monitoring or oversight reasonably required to assure that private party remedial actions protect the public health and welfare and the environment is therefore remedial action as defined in § 101(24).

This construction is not inconsistent with *Daigle*, 972 F.2d 1527. In *Daigle*, the court held the monitoring referred to in § 101(24) did not include medical monitoring of persons exposed to hazardous substances. The court noted § 101(24) defined remedial actions as actions necessary "to 'prevent or minimize the release of hazardous substances so that they do not migrate to cause substantial danger to present or future public health or welfare or the environment,'" and concluded long term medical monitoring of exposed persons did not prevent or minimize a release or threatened release. 972 F.2d at 1535. By contrast, government oversight of private party remedial actions ensures that the remedial actions will be effective in preventing or minimizing past or threatened releases.

■ Moreover, response actions, of which remedial actions are one type, are defined to include "enforcement activities related thereto." CERCLA § 101(25). It is true that the phrase cannot be stretched enough to include a private cost recovery lawsuit under § 107. *Key Tronic Corp. v. United States*, 511 U.S. 809, 114 S.Ct. 1960, 128 L.Ed.2d 797 (1994). However, it does not stretch or distort the meaning of the phrase to conclude that monitoring or oversight of a private party remedial action to determine whether the action complies with a consent decree and the provisions of CERCLA is enforcement activity related to a remedial action, and therefore, is a response under § 101(25). We note that because CERCLA is remedial legislation, it should be construed liberally to carry out its purpose. *See Colorado v. Idarado Mining*

*Co.*, 916 F.2d 1486, 1492 (10th Cir.1990), *cert. denied* 499 U.S. 960, 111 S.Ct. 1584, 113 L.Ed.2d 648 (1991). *See generally* Blake A. Watson, *Liberal Construction of CERCLA Under the Remedial Purpose Canon: Have the Lower Courts Taken a Good Thing Too Far?*, 20 Harv. Envtl. L.Rev. 199 (1996).

Appellants argue the express provision of § 104(a) permitting a responsible party to conduct a remedial investigation or feasibility study (RI/FS) only if the party agrees to reimburse the Superfund for costs of government oversight of the RI/FS shows that other oversight costs cannot be recovered under § 107(a). We disagree. First, §§ 101(24) and (25) and 107(a) clearly and unambiguously provide for recovery of costs of government oversight of private party remedial action. Second, a RI/FS is a removal action, not a remedial action. The definition of removal expressly includes monitoring, assessment, and evaluation of the release or threat of release, and "action taken under section 9604(b) of this title," which grants the President the authority to undertake a RI/FS. *See Razore v. Tulalip Tribes*, 66 F.3d 236, 239 (9th Cir.1995); *Kelley v. E.I. DuPont de Nemours & Co.*, 17 F.3d 836, 840 (6th Cir. 1994); *Rohm & Haas*, 2 F.3d at 1277; *Celtor Chemical Corp.*, 901 F.Supp. at 1488. The existence of a separate provision requiring an express prior agreement for payment of the costs of government oversight of a particular type of private party removal action does not show that Congress intended to preclude recovery of costs of overseeing private party remedial actions. *See Ekotek*, 1995 WL 580079, *8.

Nor does the existence of separate provisions authorizing payment from the Superfund of "governmental response costs" (CERCLA § 111(a)(1), 42 U.S.C. § 9611(a)(1)) and costs of "appropriate Federal and State oversight of remedial activities" (CERCLA § 111(c)(8), 42 U.S.C. § 9611(c)(8)) establish that costs of governmental oversight of remedial action are not response costs. As the court noted in *Rohm & Haas*, the courts have complained CERCLA is inartfully drafted, and is "riddled with inconsistencies and redundancies." 2 F.3d at 1270 n. 6 (quoting *United States v. Alcan*

*Aluminum Corp.,* 964 F.2d 252, 258, n. 5 (3d Cir.1992)). *See also Exxon Corp. v. Hunt,* 475 U.S. 355, 363, 106 S.Ct. 1103, 1109–10, 89 L.Ed.2d 364 (1986).

We conclude that government monitoring or oversight of a private party remedial action is a remedial action under § 101(24). Consequently, under CERCLA § 107(a)(4)(A), responsible parties are liable for the costs of EPA oversight of ARCO's remedial action, and ARCO is entitled to contribution under § 113(f).

### Attorney Fees Incurred in Negotiating the Consent Decree

Appellants contend the district court erred in ruling ARCO was entitled to recover the attorney fees it incurred in negotiating the consent decree with the EPA. ARCO concedes the Supreme Court so held in *Key Tronic Corp.,* 511 U.S. 809, 114 S.Ct. 1960. Accordingly, we reverse the district court on this issue.

### Cross–Appeal—Attorney Fees Incurred in Locating Potentially Responsible Parties

■ ARCO contends this case should be remanded to permit it to prove and recover the amount of attorney fees it incurred in locating potentially responsible parties. In *Key Tronic,* the Court held that although litigation-related attorney fees incurred in prosecuting a private response recovery action were not recoverable, attorney fees incurred in identifying other potentially responsible parties were recoverable as a necessary cost of response. The identification of responsible parties might be done by non-attorneys, and such identification increases the probability of an effective cleanup, significantly benefits the entire cleanup effort, and serves a statutory purpose apart from the reallocation of costs. 511 U.S. at ——, 114 S.Ct. at 1967. *Key Tronic* was decided after entry of final judgment in this case, and ARCO argues it should now be given the opportunity to prove and recover the amount of attorney fees it incurred in identifying potentially responsible parties. We disagree. ARCO did not raise this issue below and, ordinari-

ly, issues not raised before the trial court will not be considered on appeal. *See Walker v. Mather (In re Walker),* 959 F.2d 894, 896 (10th Cir.1992).

We reject ARCO's argument that the district court's pretrial ruling on attorney fees prevented it from raising this issue. The court followed *FMC Corp. v. Aero Industries,* 998 F.2d 842 (10th Cir.1993), in ruling before trial that although litigation attorney fees were not recoverable, nonlitigation attorney fees necessary to the cleanup were recoverable.

Neither *FMC* nor the district court held fees incurred in identifying responsible parties were not recoverable. In *FMC,* the court held that although litigation attorney fees are not recoverable, "nonlitigation removal-related attorney fees" such as fees incurred in negotiating contracts with parties that actually removed the hazardous waste could be recoverable as "necessary costs of response" if they were necessary to the cleanup effort. The court simply ruled litigation fees were not recoverable while nonlitigation fees necessary to the cleanup were recoverable. 998 F.2d at 847. *Key Tronic's* holding that fees incurred in identifying other responsible parties can be recovered did not change the rule in this circuit that although litigation fees are not recoverable, nonlitigation attorney fees are recoverable. *Id.*

Here, ARCO was free before *Key Tronic* to argue attorney fees incurred in identifying responsible parties were recoverable as nonlitigation fees that benefitted the cleanup effort. ARCO failed to make that argument before the district court and is not entitled to a second chance to do so.

### Cross–Appeal—Settlement Judge Fees

The district court appointed Professor Martin Frey as adjunct settlement judge, and ordered that his fees and expenses be shared 50% by ARCO and 50% by defendants. ARCO contends the district court erred in denying its request that all compensation to the adjunct settlement judge be assessed against defendants as part of the taxable costs. ARCO argues the settlement

judge was a special master and, as prevailing party, it is entitled under Fed. R. Civil P. 54(d) to an award of its share of the master's fees and expenses as part of the costs. We disagree.

■ Compensation of a special master is governed by Fed.R.Civ.P. 53(a). Rule 53(a) provides that a special master's compensation "shall be charged upon such of the parties... as the court may direct." District courts have discretion to apportion the compensation of a special master among the parties. 9A Charles Wright & Arthur Miller, Federal Practice & Procedure: Civil 2d § 2608 (1995). *See Brock v. Ing,* 827 F.2d 1426, 1428 (10th Cir.1987) (although in a given case, fairness may suggest the expense be borne by one of the parties).

■ Here, the district court reasoned that because both sides benefitted from the services of the settlement judge, each side should pay half the fees and expenses, and ARCO has not shown this ruling by the district court was an abuse of discretion.

### Conclusion

We affirm the district court's ruling that ARCO is entitled to recover for its payment of the EPA's oversight costs, but reverse that portion of the judgment allowing recovery of attorney fees incurred by ARCO in negotiating the consent decree. On the cross-appeal, we affirm the district court's ruling on attorney fees and the court's apportionment of fees paid to the settlement judge.