**UNITED STATES of America**

v.

**Ralph L. LOWE, et al.**

**Civ. A. No. H–91–830.**

United States District Court,
S.D. Texas,
Galveston Division.

Sept. 20, 1994.

Robert G. Darden, U.S. Attorneys Office, Houston, TX, Carrick Brooke–Davidson, Asst. Atty. Gen. Environment & Natural Resources Div., U.S. Dept. of Justice, Washington, DC, for the U.S.

Kent E. Hanson, Denver, CO, Gary T. Cornwell, The Woodlands, TX, James E. McNerney, Jr., Benckenstein & Oxford, Austin, TX, for Ralph L. Lowe, Dixie Oil Processors.

Mark J. White, Baker & Botts, Austin, TX, for Dow Chemical Co., Merichem Co., Monsanto Co., Mobile Chemical Co., Arco Chemical Co., Rohm & Maas Co., Robert Butz, William E. Repschlager, Phillip Brubaker, John W. Kongable, Goodyear Tire & Rubber Co.

Robert E. Morse, III, Crain Caton & James, Houston, TX, for Tex. Tin Co.

Jesse Rucker Pierce, Clements O'Neill Pierce & Nickens, Houston, TX, for Al Withrow, Joseph Frantz.

Roderick Duncan Hardie, Hughs Watters & Askanase, Houston, TX, for Jerry Roach.

Trent L. Rosenthal, Houston, TX, for Walter Fondren, III.

Robert B. Wilson, Simms Kidd Hubbert & Wilson, Lubbock, TX, for Mary Louise Bailey, Sheldon R. Hawkins, Jr.

Craig S. Wolcott, Michael S. Hayes, Hays McConn Price & Pickering, Houston, TX, for Ethyl Corp.

## ORDER GRANTING SUMMARY JUDGMENT

KENT, District Judge.

Before the Court is Plaintiff's Motion for Summary Judgment on the issue of recoverability of oversight costs pursuant to the Comprehensive Environmental Response Compensation, and Liability Act (CERCLA), 42 U.S.C. §§ 9607, 9613. For the reasons stated below, the Plaintiff's Motion is GRANTED.

This case arose in conjunction with the Dixie Oil Processors (DOP) Superfund site near Friendswood, Harris county, Texas. Pursuant to an order issued by the Environmental Protection Agency (EPA) .under § 106 of CERCLA, 42 U.S.C. § 9606, Defendants are currently conducting the cleanup of the site. In November of 1992, the Plaintiff reached a settlement in principle with all Defendants. On August 2, 1994, this Court entered three Consent Decrees, binding all Defendants except for Monsanto Company, Dow Chemical Company USA, Merichem Company, Mobile Chemical Company, ARCO Chemical Company, Petro–Tex Chemical Company, and Rohm & Haas Company, (Monsanto Group).

Prior to the execution of the Consent Decree with the Monsanto Group, the United States Court of Appeals for the Third Circuit held in *United States v. Rohm & Haas*, 2 F.3d 1265 (3rd Cir.1993) that the United States could not recover its costs for overseeing performance of remedial actions conducted by private parties. The proposed Consent Decree with the Monsanto Group required payment of such overhead costs. As a result of the· *Rohm & Haas* case, the Monsanto Group demanded that these costs be dropped from the settlement agreement. Plaintiff contends that the *Rohm & Haas* decision is incorrect. Thus, the sole remaining issue for this Court's analysis is whether the *Rohm & Haas* decision precludes the United States from collecting the overhead costs it claims to be recoverable under CERCLA.

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. A fact is material if its resolution in favor of one party might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A genuine issue of material fact exists if there is a genuine issue for trial that must be decided by the trier of fact. In other words, summary judgment should not be granted if the evidence indicates that a reasonable fact-finder could find in favor of the nonmoving party. *Id.* See also *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

In ruling on a Motion for Summary Judgment, the Court must accept the evidence of the nonmoving party and draw all justifiable inferences in his favor. Credibility determinations, weighing of the evidence, and the drawing of reasonable inferences are left to the trier of fact. *Anderson v. Liberty Lobby*, *supra*, 477 U.S. at 255, 106 S.Ct. at 2513.

Under Fed.R.Civ.P. 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once this burden is met, the burden shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita, supra*, 475 U.S. at 585–87, 106 S.Ct. at 1355–56; *Leonard v. Dixie Well Serv. & Supply, Inc.*, 828 F.2d 291, 294 (5th Cir.1987).

Where the moving party has met its Rule 56(c) burden, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts.... [T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.' Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no *genuine issue for trial.*" *Matsushita, supra*, 475 U.S. at 586–87, 106 S.Ct. at 1356 (quoting Fed.R.Civ.P. 56(e)) (emphasis in original).

The Court's analysis will commence with an examination of the relevant statutory authority and language.

*Statutory History of CERCLA*

CERCLA 42 U.S.C. § 9601, et seq., was enacted in December 1980 "to initiate and establish a comprehensive response and financing mechanism to abate and control the vast problems associated with abandoned and inactive hazardous waste disposal sites." H.R.Rep. No. 1016(I), 96th Cong., 2d Sess. 22, reprinted in 1980 U.S.CODE CONG. & ADMIN.NEWS 6119, 6125.

CERCLA was re-authorized and amended in 1986 by the Superfund Amendment and Reauthorization Act (SARA), Pub.L. 99–499, 100 Stat. 1613 (1986). CERCLA, when originally enacted, established the Hazardous Substance Trust Fund, 42 U.S.C. § 9631, to be utilized in connection with the cleanup of releases of hazardous substances into the environment. Section 9631 was repealed when Hazardous Substance Superfund (Superfund), 26 U.S.C. § 9507, was established under the provisions of SARA. Superfund finances the Government's response to actual or threatened releases of hazardous materials into the environment. The Superfund derives its funds from general revenues, environmental taxes, monies recovered under CERCLA, and CERCLA authorized penalties and punitive damages.

*Definitions Under CERCLA*

The President of the United States is authorized under § 9604(a) of CERCLA to respond with "remedial" or other "removal" action against any threatened or actual release of hazardous substances that may pose a threat to public health. Congress has authorized the Government to expend Superfund money to take direct response actions which are consistent with the National Contingency Plan and to recover all response costs from all persons responsible for the releases of hazardous substances. 42 U.S.C. § 9607(a). In pertinent part, § 9607(a) provides:

(1) the owner and operator of a vessel or a facility,

(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,

(3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances and

(4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for—

(A) all costs of removal or remedial action incurred by the United States Government or a state or an Indian tribe not inconsistent with the National Contingency Plan;

(B) any other necessary costs of response incurred by any other person consistent with the National Contingency Plan;

(C) damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss resulting from such a release; and

(D) the cost of any health assessment or health effect study carried out under § 9604(i) of this title.

As noted, § 9607(a) authorizes the Government to recover all costs of removal or remedial response actions. The statute defines "remove" or "removal" as follows:

The terms "remove or removal" means the clean up or removal of released hazardous substances from the environment, such actions as may be necessary taken in the event of the threat of release of hazardous substances into the environment, such action as may be necessary to monitor, assess, and evaluate the release or threat of release of hazardous substances, the disposal of removed material, or the taking of such other actions as may be necessary to prevent, minimize or mitigate damage to

the public health or welfare or to the environment, which may otherwise result from a release or threat of release. 42 U.S.C. Section 9601(23).

The statute defines "remedy" as follows:

The terms "remedy" or "remedial action" means those actions consistent with permanent remedy taken instead of or in addition to removal actions in the event of a release or threatened release of a hazardous substance into the environment to prevent or minimize the release of hazardous substances so that they do not migrate to cause substantial danger to present or future public health or welfare or the environment. The term includes, but is not limited to, such actions at the location of the release as storage, confinement, perimeter protection using dikes, trenches, or ditches, clay cover, neutralization, cleanup of released hazardous substances or contaminated materials, recycling or reuse, diversion, destruction, segregation of reactive wastes, dredging or excavations, repair or replacement of leaking containers, collection of leachate, and runoff, onsight treatment or incineration, provision of alternative water supplies, and any monitoring reasonably required to assure that such actions protect the public health and welfare and the environment. *Id.*, Section 9601(24).

The term "respond" or "response" is currently defined as, "remove, removal, remedy, and remedial action, all such terms (including the terms 'removal' and 'remedial action') including enforcement activities related thereto." *Id.* § 9601(25).

*Application of CERCLA*

Defendants contend that oversight costs are not recoverable under CERCLA, citing the Third Circuit's decision in the *Rohm & Haas* case. Defendants concede that, under CERCLA § 107, recoverable expenses include costs incurred in conducting preliminary investigations as well as the costs of the remedial investigation and remedial work actually performed by the government. Defendants assert that costs incurred while overseeing the performance of others engaged in cleanup activities are not recoverable under the theory that such costs are spent by the

Government to protect the general public rather than conferring a benefit on those being overseen. In the *Rohm & Haas* case, case, the court found these costs were administrative costs of the type addressed by the United States Supreme Court in *National Cable Television Association, Inc. v. United States,* 415 U.S. 336, 94 S.Ct. 1146, 39 L.Ed.2d 370 (1974). This case was later interpreted to represent that:

> Congress must indicate clearly its intention to delegate to the executive the discretionary authority to recover administrative costs not inuring directly to the benefit of regulated parties by imposing additional financial burdens, whether characterized as 'fees' or 'taxes,' on those parties.

*Skinner v. Mid–America Pipeline Co.,* 490 U.S. 212, 224, 109 S.Ct. 1726, 1734, 104 L.Ed.2d 250 (1989).

In *United States v. Rohm & Haas,* 2 F.3d at 1274 (3rd Cir.1993), the Third Circuit stated that "EPA can only prevail if the statutory definition of removal unambiguously allows for the government to recover the oversight costs it here seeks." The Court further observed that the terms "such actions as may be necessary to monitor, assess, and evaluate the release or threat of release of hazardous substances" did not specifically refer to oversight costs. *Id.* at 1275. In addition the Court found that it "is at least as plausible to read this language as referring to actual monitoring of a release or threat of release rather than oversight of the monitoring and assessment activities of others." *Id.*

The amount of oversight costs sought by the Government totals $713,750.82. Defendants express no objection to this amount other than the *Rohm & Haas* question.

This Court respectfully finds the reasoning in *Rohm & Haas* to be unpersuasive. EPA's oversight of cleanups conducted by liable parties fits squarely within the terms of CERCLA § 107(a) and § 101(23). Oversight necessarily encompasses the evaluation of all stages of the cleanup process, from the preliminary investigation through the final treatment, destruction, disposal or removal of hazardous substances on the site. Oversight is "necessary to prevent, minimize or mitigate"

damages to the public welfare, and necessary to "monitor, assess, and evaluate" the release or threatened release of hazardous substances into the environment. The statute makes no distinction between the EPA's direct monitoring of a release and its monitoring of a private party cleanup response. Moreover, were this Court to embrace the Third Circuit's reasoning in *Rohm & Haas*, it would lead to the incongruous result that the EPA could recover the costs of overseeing its own contractors, but not the costs of overseeing those hired by the potentially responsible parties.

Rather, this Court finds the Sixth Circuit's reasoning in *United States v. R.W. Meyer, Inc.*, 889 F.2d 1497, 1504 (1989) to be more persuasive:

> Given § 9607(a)'s authorization for the government to recover all costs of its removal or remedial actions, we are not persuaded that the government's indirect costs were unauthorized. Rather, to the extent cleanup actions are necessary, we are persuaded that the statute contemplates that those responsible for hazardous waste at each site must bear the full cost of cleanup actions and that those costs necessarily include both direct costs and a proportionate share of indirect costs attributable to each site. In essence then, the allocation of the indirect costs to specific cleanup sites effectively renders those costs direct costs attributable to a particular site. We are confident that had Meyer or the other defendants undertaken the cleanup operation by contracting with another company to perform the cleanup, the costs of that cleanup whether characterized as costs, direct costs plus indirect costs, or otherwise, would include the type of indirect costs challenged here.[1]

In addition, the *Rohm & Haas* decision conflicts with the Second Circuit's decision in *State of New York v. Shore Realty*, 759 F.2d 1032, 1042–1043 (2d Cir.1985), where the Court ruled that the "State's costs in assessing the conditions of the site and supervising the removal of the drums of hazardous waste squarely fall within CERCLA's definition of response costs, even though the State is not undertaking to do the removal."

This Court finds that the challenged oversight costs are part and parcel of all costs of the removal action, which are recoverable under CERCLA. Contrary to the Monsanto Group's assertions, the contested indirect costs are attributable to its cleanup site in that they represent the portion of EPA's overhead expenses that supported the Government's response action on the DOP site. To the extent cleanup actions are necessary, this Court is persuaded that the statute contemplates that those responsible for hazardous waste at the DOP site must bear full cost of cleanup actions and those costs necessarily include both direct costs and a proportionate share of the oversight costs attributable to that site.

For the aforementioned reasons, the Court finds no genuine issue of material fact, and therefore the United States' Motion for Summary Judgment is HEREBY GRANTED. The parties shall each bear their own costs incurred herein to date. The parties are ORDERED to file nothing further on this issue in this Court, especially motions to reconsider or the like. Any further relief shall be sought, as timely, from the United States Court of Appeal for the Fifth Circuit.

IT IS SO ORDERED.

---

1. The indirect costs sought by the Government in *United States v. R.W. Meyer, Inc.*, 889 F.2d 1497, 1502 (6th Cir.1989), consisted of "rent and utilities for site and non-site office space; payroll and benefits for program managers, clerical support and other administrative support staff; and pay earned by on-scene coordinators while on leave, or performing tasks not directly associated with a particular site."