**REVISED**

United States Court of Appeals,

Fifth Circuit.

No. 96-60126.

Cynthia A. METZLER, Secretary of Labor, Petitioner,

v.

ARCADIAN CORPORATION;  and Occupational Safety and Health Review Commission, Respondents.

April 28, 1997.

Petition for Review of a Final Order of the Occupational Safety and Health Review Commission.

Before POLITZ, Chief Judge, and WIENER and STEWART, Circuit Judges.

STEWART, Circuit Judge:

Today we interpret the meaning of the General Duty Clause of the Occupational Safety and Health Act of 1970 (OSH Act) (29 U.S.C. §§ 651-678).  This case presents the question of whether the Secretary of Labor (Secretary) was correct when he decided to fine Arcadian Corporation (Arcadian) on a per-employee basis for violating the Clause.  The Occupational Safety and Health Review Commission (Commission) reversed the Secretary's decision, holding that the unit of prosecution under the Clause is the *condition* that poses a hazard to employees, and not the affected employee(s). The Secretary filed this petition for review.  We deny the petition and hold that the General Duty Clause unambiguously provides that the violative condition, not the employee, is the unit of prosecution.

BACKGROUND

Arcadian Corporation (Arcadian) manufactures fertilizer at a

1

plant in Lake Charles, Louisiana. A terrible accident occurred on July 28, 1992. That day, a urea reactor at the plant exploded, scattering the reactor and its contents over a 600-acre area. The reactor's 19,000 pound steel head was blown 500 feet, and ammonia and carbon dioxide, heated to 370 °F, were released into the atmosphere. According to the Secretary, Arcadian had detected leaks in the liner of the reactor's pressure vessel prior to the explosion and failed to take steps to eliminate the hazard, such as shutting down the reactor, implementing a program to monitor the vessel's leak detection system, and assuring that critical welds were performed according to industry standards and design specifications. Eighty-seven Arcadian employees were exposed to the danger of being struck by flying debris, suffering heat and chemical burns, and asphyxiation by toxic gases.

PROCEDURAL HISTORY

In January 1993, the Occupational Health and Safety Administration (OSHA) cited Arcadian for violations of the OSH Act. The Secretary of Labor argued that Arcadian willfully violated the OSH Act's General Duty Clause, which requires employers to provide a place of employment free from hazards that cause or are likely to cause death or serious physical harm to employees. 29 U.S.C. § 654(a)(1). Citation 2, Item 1 alleged that Arcadian had failed to provide Mary Poullard Smith with safe employment because the catastrophic explosion in the pressure vessel constituted a violation of the General Duty Clause. OSHA alleged that the violation was willful and proposed a penalty of $50,000 and several

other corrective measures.[1]  Items 2 through 87 of Citation 2 were identical to Item 1 except for the identity of the employee exposed to the hazard.  When all was said and done, Arcadian was assessed a penalty of $4,350,000.

Pursuant to the OSH Act, Arcadian contested the citations before an administrative law judge (ALJ) on the ground that the unit of prosecution for violating the General Duty Clause is the violative condition, not the employee or employees exposed to that condition.  After some discovery, Arcadian moved for partial summary judgment and requested that Items 2 through 87 be vacated and their allegations consolidated with Item 1. The Secretary of Labor filed a cross-motion for summary judgment.  At the time the motions were filed, the record consisted essentially of the citations and a deposition transcript of Raymond Donnelly, Director of OSHA's Office of General Industry Compliance Assistance. Donnelly provided uncontradicted evidence that the number 87 was a "multiplier" which represented the number of employees exposed to a single hazardous condition.  He admitted that Arcadian was only required to correct the condition once, not 87 times.

The ALJ sided with Arcadian, holding that Arcadian's failure to properly inspect and maintain the reactor was a single course of conduct that could support only one violation of the General Duty

---

[1] 29 U.S.C. § 666(a) provides that "[a]ny employer who willfully or repeatedly violates the requirements of section 5 of this Act [i.e., the General Duty Clause] ... may be assessed a civil penalty of not more than $70,000 for each violation, but not less than $5,000 for each willful violation."  In 1990, Congress increased the fine from $10,000 to $70,000 and added the $5,000 minimum penalty for willful violations.

Clause. The Occupational Safety and Health Review Commission (Commission) affirmed the ALJ. In a 2-1 decision, the majority concluded that the General Duty Clause unambiguously provided that employers should be fined on a per-violation, rather than a per-employee, basis. Four reasons justified the Commission's conclusion. First, the majority argued that issuing identical abatement orders for each employee exposed to the same hazard would increase administrative and legal costs and would be inconsistent with congressional intent. Second, according to the majority, the General Duty Clause referred to employees as a group, rather than as individuals; the phrase "each of his employees" in § 654(a) merely refers to all employees as opposed to some. Third, the majority viewed the Secretary's interpretation of the General Duty Clause as a departure from previous practices, which had allowed separate citations for each individual hazard but not for each exposed employee. This approach was unreasonable, concluded the Commission, because the Secretary had not explained the reason for his departure from earlier practice. Finally, the Commission concluded that it did not owe deference to the Secretary's interpretation of the General Duty Clause because the Commission viewed itself as the final adjudicator of the OSH Act and because the statutory authority to assess penalties rested squarely with the Commission.

The Chairman of the Commission dissented. He argued that the Commission had upheld violation-by-violation citations in other cases, including per-employee citations, under various OSH Act

standards. In his opinion, the permissibility of such citations depends on the language of the cited provision. He concluded that the Secretary's interpretation was compatible with the Act and did not conflict with the plain language of the General Duty Clause. The Chairman also stated that although the Secretary's interpretations of the OSH Act are not generally entitled to deference from the Commission, deference was due here because "whether and how to cite under [the General Duty Clause] relates directly to the Secretary's prosecutorial discretion and goes to the heart of his enforcement authority."

The Commission ultimately remanded the case to the ALJ to provide the Secretary an opportunity to amend the citations. The Secretary, however, declined to do so. The ALJ thereafter reentered an order vacating Items 2-87 and severing them from the rest of the case. The order became the final order of the Commission, and the Secretary filed this petition for review.

DISCUSSION

I. STANDARD OF REVIEW

We begin with the now-familiar two-step process for reviewing an administrative agency's interpretation of a statute. Our guide is the Supreme Court's decision in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), in which the Court held that we must first apply traditional principles of statutory construction to determine congressional intent. *Id.* at 842, 104 S.Ct. at 2781. "If the intent of Congress is clear," wrote the Court, "that is the end of

5

the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 843, 104 S.Ct. at 2781. Second, assuming the plain language of the statute is ambiguous (i.e., susceptible of two reasonable interpretations) or silent on the matter at issue, "the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.;see United Servs. Auto. Ass'n v. Perry,* 102 F.3d 144, 146 (5th Cir.1996).

II. IS THE GENERAL DUTY CLAUSE AMBIGUOUS?

*A. Principles of Statutory Construction*

Step one of *Chevron* requires us to apply "traditional principles of statutory construction" to determine whether Congress expressed a clear intent with regard to the meaning of the General Duty Clause. "In a statutory construction case, the beginning point must be the language of the statute, and when a statute speaks with clarity to an issue[,] judicial inquiry into the statute's meaning, in all but the most extraordinary circumstances, is finished." *Estate of Cowart v. Nicklos Drilling Co.,* 505 U.S. 469, 475, 112 S.Ct. 2589, 2594, 120 L.Ed.2d 379 (1992). When we evaluate the terms of a statute, the Supreme Court has cautioned us to abide by a "fundamental principle of statutory construction (and, indeed, of language itself) that the meaning of a word cannot be determined in isolation, but must be drawn from the context in which it is used." *Deal v. United States,* 508 U.S. 129, 132, 113 S.Ct. 1993, 1996, 124 L.Ed.2d 44 (1993); *see also Babbitt v. Sweet Home Chapter of Communities for a Great Oregon,* --- U.S. ----, ----

6

, 115 S.Ct. 2407, 2411, 132 L.Ed.2d 597 (1995). As such, a term is not ambiguous, even though the term may be susceptible to different interpretations, when "all but one of the meanings is ordinarily eliminated by context." *Deal,* 508 U.S. at 131-32, 113 S.Ct. at 1996. At the same time, "a statute must, if possible, be construed in such fashion that every word has some operative effect." *United States v. Nordic Village, Inc.,* 503 U.S. 30, 36, 112 S.Ct. 1011, 1015, 117 L.Ed.2d 181 (1992); *United States v. Rodriguez-Rios,* 14 F.3d 1040, 1044 (5th Cir.1994) (en banc). Finally, "[i]n ascertaining whether the agency's interpretation is a permissible construction of the language, a court must look to the structure and language of the statute as a whole." *National R.R. Passenger Corp. v. Boston and Maine Corp.,* 503 U.S. 407, 417, 112 S.Ct. 1394, 1401, 118 L.Ed.2d 52 (1992).

*B. The General Duty Clause*

Section 654(a) of the OSH Act, known as the General Duty Clause, states simply:

(a) Each employer—

(1) shall furnish to *each of his employees* employment and a place of employment which are free from *recognized hazards* that are causing or likely to cause death or serious physical harm to his employees;

(2) shall comply with *occupational safety and health standards* promulgated under this Act.

29 U.S.C. § 654(a)(1), (2) (emphasis added). Before addressing the arguments of the parties, we find it helpful to place the Clause in proper context. It is well-settled that the Secretary has essentially two weapons in its arsenal of enforcement. First, the

7

Secretary may issue a citation for violations of specific standards promulgated (through rulemaking) by the Secretary. Alternatively, where the Secretary has not promulgated standards, he may rely on the General Duty Clause as a "catchall provision." *Pratt & Whitney Aircraft, Div. of United Technologies Corp. v. Secretary of Labor,* 649 F.2d 96, 98 (2d Cir.1981). Courts have held that enforcement through the application of standards is preferred because standards provide employers notice of what is required under the OSH Act. *See, e.g., Usery v. Marquette Cement Manufacturing Co.,* 568 F.2d 902, 905 n. 5 (2d Cir.1977) ("The standards presumably give the employer superior notice of the alleged violation and should be used instead of the general duty clause whenever possible.").

In this case, it is undisputed that the Secretary did not promulgate standards which would have governed the accident at the Arcadian plant, and so the case was brought under the General Duty Clause. We must decide how far the Secretary may go in enforcing the Clause, for it is clear that a per-employee unit of prosecution carries far heavier penalties than a per-violative-condition unit of prosecution.[2] After carefully considering the arguments of the parties, we proceed no further than step one of the *Chevron* analysis and conclude that the Clause is not ambiguous because it provides that a violative condition, not an employee, is the proper unit of prosecution for a General Duty Clause violation. Three

---

[2]If Arcadian had been fined on a per-violative-condition basis, a $70,000 fine could have been the maximum penalty assessed against Arcadian. 29 U.S.C. § 666(a). By contrast, because the Secretary applied a per-employee formula, Arcadian was fined $4,500,000.

justifications support our conclusion.

*1. The Plain Meaning of the General Duty Clause*

First, a plain reading of the Clause reveals that its focus is on an employer's duty to prevent hazardous conditions from developing in the employment itself or the physical workplace. Indeed, the central thrust of § 654(a)(1) concerns "recognized hazards" that cause or may cause "death or serious physical harm to ... employees." Subsection (a)(2)—the enforcement provision of the Clause—is consistent with this interpretation. It suggests that employers must "comply with occupational safety and health standards promulgated" by the Secretary. Section 652(8) defines an "occupational safety and health standard" as "a standard which requires *conditions,* or the adoption or use of one or more *practices, means, methods, operations,* or *processes,* reasonably necessary or appropriate to provide safe or healthful *employment* and *places of employment.*" (Emphasis added). Thus, taken together, subsections (a)(1) and (a)(2) of the General Duty Clause are exclusively focused on an employer's duty to prevent hazardous conditions from developing, either in employment or the place of employment.

Our conclusion is reinforced by examining the elements the Secretary must prove in a General Duty Clause prosecution. Seizing on the plain terms of the Clause, courts (including our own) have held that the Secretary must prove three elements: "(1) that the employer failed to render its workplace "free' of a hazard which was (2) "recognized' and (3) "causing or likely to cause death or

9

serious physical harm.' " *National Realty & Constr. Co. v. OSHRC,* 489 F.2d 1257, 1265 (D.C.Cir.1973).[3] Plainly, the Secretary need not prove that a *particular* employee in fact was exposed to a hazardous condition.[4] Consistent with the OSH Act generally, the mere fact that a recognized hazardous condition exists and is "likely to cause" death or serious physical harm constitutes a sufficient showing that an employer has breached the General Duty Clause.[5] *See, e.g., Whirlpool Corp. v. Marshall,* 445 U.S. 1, 12,

[3]*Accord Kelly Springfield Tire Co., Inc. v. Donovan,* 729 F.2d 317, 320-21 (5th Cir.1984); *Teal v. E.I. DuPont de Nemours & Co.,* 728 F.2d 799, 804 n. 6 (6th Cir.1984); *Baroid Div. of NL Indus., Inc. v. OSHRC,* 660 F.2d 439, 444 (10th Cir.1981); *Pratt & Whitney Aircraft, Div. of United Technologies Corp. v. Secretary of Labor,* 649 F.2d 96, 98 (2d Cir.1981); *St. Joe Minerals Corp. v. OSHRC,* 647 F.2d 840, 844 (8th Cir.1981); *Babcock & Wilcox Co. v. OSHRC,* 622 F.2d 1160, 1164 (3d Cir.1980); *Magma Copper Co. v. Marshall,* 608 F.2d 373, 375 (9th Cir.1979); *Georgia Elec. Co. v. Marshall,* 595 F.2d 309, 321 (5th Cir.1979); *Champlin Petroleum Co. v. OSHRC,* 593 F.2d 637, 640 (5th Cir.1979); *Marshall v. L.E. Myers Co.,* 589 F.2d 270, 271 (7th Cir.1978); *Empire-Detroit Steel Div., Detroit Steel Corp. v. OSHRC,* 579 F.2d 378, 383 (6th Cir.1978); *Titanium Metals Corp. v. Usery,* 579 F.2d 536, 540 (9th Cir.1978); *Usery v. Marquette Cement Manufacturing Co.,* 568 F.2d 902, 909 (2d Cir.1977); *Getty Oil Co. v. OSHRC,* 530 F.2d 1143, 1145 (5th Cir.1976). We have added a fourth element, namely, that the hazard must be preventable. *Georgia Elec. Co.,* 595 F.2d at 321; *Getty Oil,* 530 F.2d at 1145.

[4]*See, e.g., Champlin Petroleum Co.,* 593 F.2d at 640 ("It is the Secretary's burden to show that demonstrably feasible measures would materially reduce the likelihood that such injury as that which resulted from the cited hazard would have occurred."); *see also Teal,* 728 F.2d at 804 ("The protection from *exposure* to serious *hazards* is the primary purpose of the general duty clause ...." (second emphasis added)); *Babcock & Wilcox Co.,* 622 F.2d at 1165 (rejecting the contention that the General Duty Clause required proof that a specific employee would likely suffer harm).

[5]Courts have held that a hazardous condition is "likely to cause death or serious physical harm to ... employees" if the Secretary presents evidence "that a practice could eventuate in serious physical harm upon other than a freakish or utterly

10

100 S.Ct. 883, 890-91, 63 L.Ed.2d 154 (1980); *Mineral Indus. & Heavy Constr. Group v. OSHRC,* 639 F.2d 1289, 1294 (5th Cir. Unit A 1981); *Illinois Power Co. v. OSHRC,* 632 F.2d 25, 28 (7th Cir.1980); Richard S. Morey, Comment, *The General Duty Clause of the Occupational Safety and Health Act of 1970,* 86 HARV. L.REV. 988, 994 (1973). If it were otherwise—if proof that a particular employee was exposed to a hazard is not required under standards promulgated by the Secretary, but is required for General Duty Clause violations—we would produce the anomalous result that the "catchall" provision of the OSH Act (the General Duty Clause) provides *less* protection for employees (because actual employee exposure must be shown) than the more narrow regulatory framework constructed by the Secretary.

The Secretary argues that if Congress intended to create a single duty running to employees in the aggregate, then Congress "could have omitted the words "each of' in the general duty clause, for those words serve no purpose unless they mean that the employer's duty runs to each individual employee rather than to employees as a group." We simply cannot accept this construction

---

implausible concurrence of circumstances...." *National Realty,* 489 F.2d at 1265 n. 33; *accord Kelly Springfield,* 729 F.2d at 325; *Illinois Power Co.,* 632 F.2d at 28. Actual knowledge on the part of the employer is not required; rather, "the question is whether the hazard is recognized by the industry of which [the employer] is a part." *Brennan,* 494 F.2d at 463; *accord Kelly Springfield,* 729 F.2d at 323; *Pratt & Whitney,* 649 F.2d at 101. Thus, the "likely to cause death or serious physical harm" aspect of the General Duty Clause violation does not require the Secretary to prove that particular, identifiable employees in fact were exposed to a hazardous condition. It is the dangerous condition itself that gives rise to a violation of the Clause.

11

of the Clause.  First, we have not read "each of" out of the General Duty Clause.  In the context of the Clause as a whole, with its principal (if not exclusive) focus on hazardous conditions, "each of" simply means that an employer's duty extends to all employees, regardless of their individual susceptibilities (i.e., age or pregnancy).  Second, if we were to accept the Secretary's view that an employee is the proper unit of prosecution for a General Duty Clause violation, we would be compelled to conclude that, despite Arcadian's alleged egregious violation of the Clause, if a particular employee had not *in fact* been exposed to the hazardous condition at the Arcadian plant, Arcadian would not have violated the General Duty Clause.  Such a result is flatly inconsistent with the OSH Act's central purpose of protecting workers from hazardous conditions in employment and the workplace, regardless of whether a particular employee has in fact been injured or exposed to a hazard.  *See, e.g., Whirlpool Corp.,* 445 U.S. at 12, 100 S.Ct. at 890-91; *Mineral Indus.,* 639 F.2d at 1294; *Babcock & Wilcox Co.,* 622 F.2d at 1165 (interpreting the General Duty Clause); Morey, 86 HARV. L.REV. at 988, 991.

The Secretary also argues that if the General Duty Clause does not run to each employee, we would be undermining the deterrence function of the OSH Act generally and the General Duty Clause in particular.  "The congressional intent that civil penalties serve as a meaningful deterrent will not be fulfilled," argues the Secretary, " if a single $70,000 penalty is the most that can be assessed against a large employer who willfully exposes numerous

12

employees to a known hazard in violation of the general duty clause." Because we have concluded that an employer's duty under the Clause is to avoid hazardous conditions, the Secretary's argument is best addressed to Congress rather than this court. As we said in our en banc decision in *Mississippi Poultry Ass'n, Inc. v. Madigan,* 31 F.3d 293 (5th Cir.1994) (en banc) (opinion of Wiener, J.), "[p]olicy choices are for the political branches, and Congress is the supreme branch for making such choices." *Id.* at 299 (citing *Chevron* ). In 1990, Congress increased the civil penalty for General Duty Clause violations from $10,000 per violation to $70,000, and added a $5,000 minimum penalty for willful violations. It is simply not our place in the constitutional scheme to ignore the plain meaning of the Clause and offer our own free-wheeling policy judgment about the proper monetary deterrence for a General Duty Clause violation.

*2. The General Duty Clause in Context*

Second, our construction of the General Duty Clause is consistent with other provisions of the OSH Act. Section 666(a) provides that an employer "may be assessed a civil penalty of not more than $70,000 *for each violation.*" (Emphasis added). Because violations of the Clause are considered "serious,"[6] we look to § 666(k), which (like § 652(8)) speaks of "condition[s]," "practices," "means," "methods," "operations," and "processes." Here again, Congress focused on the presence of hazardous conditions as a "violation" for purposes of assessing the maximum

---

[6]*See Pratt & Whitney,* 649 F.2d at 98.

13

$70,000 penalty. Therefore, it must logically follow that a violation of the General Duty Clause must carry per-violative-condition penalties, and not per-employee penalties.

By contrast, the Secretary's position that the employee is the unit of prosecution for General Duty Clause enforcement actions runs counter to § 652(8) of the OSH Act. Section 652(8) permits the Secretary to promulgate standards governing "conditions" and "practices" of employment and within the workplace. *See International Union, UAW v. Occupational Safety & Health Admin.,* 938 F.2d 1310, 1316 (D.C.Cir.1991). As such, the Secretary *cannot* set a unit of prosecution because, in most cases, a unit of prosecution has nothing to do with employment or workplace practices or conditions. An employee could be a unit of violation, however, only if the regulated condition or practice is unique to the employee (i.e., failure to train or remove a worker). *See, e.g., Hartford Roofing,* 17 BNA OSHC 1361 (No. 92-3855, 1995) (dictum). It would therefore be anomalous for us to hold that per-employee penalties, generally unavailable for violations of OSHA standards, are *always* available for violations of the General Duty Clause—especially in light of the fact that courts have consistently held that standards are the preferred enforcement mechanism and that the General Duty Clause serves as an enforcement tool of last resort.[7]

---

[7]*See, e.g., Reich v. Montana Sulphur & Chemical Co.,* 32 F.3d 440, 445 (9th Cir.1994) ("OSHA contemplates that the Secretary will promulgate specific safety standards to insure safe and healthful working conditions.... The general duty clause applies when there are no specific standards.' ") (quoting *Donovan v. Royal Logging*

*3. The General Duty Clause and Penalty Assessment*

Finally, our interpretation of the Clause properly recognizes the respective roles played by the Secretary and the Commission in penalty assessment. It is well-settled that the Commission has the exclusive authority to assess penalties once a penalty proposed by the Secretary is contested.[8] It is also well-established that in assessing a penalty, the Commission is guided by the four criteria provided in § 666(j). In particular, the Commission must "giv[e] due consideration to the appropriateness of the penalty with respect to [1] the size of the business of the employer being charged, [2] the gravity of the violation, [3] the good faith of the employer, and [4] the history of previous violations." 29 U.S.C. § 666(j). When appropriate, the Commission includes the number of employees exposed to a hazardous condition in its

---

*Co.,* 645 F.2d 822, 829 (9th Cir.1981)), *cert. denied,* --- U.S. ----, 115 S.Ct. 1355, 131 L.Ed.2d 213 (1995); *Pratt & Whitney,* 649 F.2d at 98; *Usery,* 568 F.2d at 905 n. 5; *cf. R.L. Sanders Roofing Co. v. OSHRC,* 620 F.2d 97, 101 (5th Cir.1980) ("If the Secretary is concerned about employees' falling from the edge of a flat roof, he should promulgate a regulation that specifically addresses that hazard rather than seek to impose liability on employers under the general duty clause for failure to protect against it.").

[8] 29 U.S.C. § 666(j) ("The Commission shall have authority to assess *all* civil penalties provided in this section ...." (emphasis added)); § 659(a) (stating that the Secretary's penalty is merely a "propos[al]"); § 659(c) ("If an employer notifies the Secretary that he intends to contest a citation ... [t]he Commission shall thereafter issue an order ... affirming, modifying, or vacating the Secretary's citation or *proposed penalty* ...." (emphasis added)); *see Donovan v. Oil, Chem., & Atomic Workers Int'l Union & Its Local 4-23,* 718 F.2d 1341, 1346, 1347 (5th Cir.1983), *cert. denied,* 466 U.S. 971, 104 S.Ct. 2344, 80 L.Ed.2d 818 (1984); *Long Mfg. Co. v. OSHRC,* 554 F.2d 903, 908 (8th Cir.1977); *California Stevedore & Ballast Co. v. OSHRC,* 517 F.2d 986, 988 (9th Cir.1975).

15

analysis of prong two of the § 666(j) inquiry.[9]  *See J.A. Jones Constr. Co.,* 15 BNA OSHC 2201, 2214, 1991-93 CCH OSHD ¶ 29,964, p. 41,033 (No. 87-2059, 1993);  *Kus-Tum Builders, Inc.,* 10 BNA OSHC 1128, 1132, 1981 CCH OSHD ¶ 25,738, p. 32,107 (No. 76-2644, 1981). Our holding that the General Duty Clause contemplates per-violative-condition as opposed to per-employee units of prosecution goes hand-in-hand with the Commission's authority to adjust (up or down) penalties depending upon the number of employees injured or exposed to a hazardous condition.  By contrast, if we were to agree with the Secretary's construction of the General Duty Clause and hold that OSH Act penalties for violations of the Clause should be fixed on a per-employee basis, we would be usurping the Commission's statutorily ordained power to assess "all" penalties.  29 U.S.C. § 666(j).  This we decline to do.

## CONCLUSION

Finding that the General Duty Clause of the OSH Act unambiguously provides that a hazardous condition is the proper unit of prosecution, we DENY the Secretary's petition for review and AFFIRM the decision of the Commission.

---

[9]The Secretary conceded this point at oral argument.