United States Court of Appeals,

Fifth Circuit.

No. 96-20817.

UNITED STATES of America, Plaintiff-Appellee,

v.

Ralph L. LOWE, et al., Defendants,

Dow Chemical Company USA;  Merichem Company;  Monsanto Company;
Mobil Chemical Company;  Arco Chemical Company;  Petro-Tex Chemical
Corporation;  Rohm & Haas Company, Defendants-Appellants.

July 31, 1997.

Appeal from the United States District Court for the Southern
District of Texas.

Before DAVIS, STEWART and PARKER, Circuit Judges.

PARKER, Circuit Judge:

The appellants present to this court the issue of whether the
government may recover costs expended in overseeing a hazardous
waste cleanup that was conducted by private parties.  The district
court granted the government summary judgment on this issue,
finding that such costs are recoverable by the government.  For the
following reasons, we affirm.

FACTS AND PROCEEDINGS BELOW

This case arose in conjunction with the Dixie Oil Processors
Superfund site located near Friendswood in Harris County, Texas.
Pursuant to an order issued by the Environmental Protection Agency
("EPA") under § 106 of CERCLA, 42 U.S.C. § 9606, the appellants
conducted a cleanup of the site that was certified as complete by
the EPA in April 1993.

In 1991 the government filed a cost recovery action to recover

1

its response costs pursuant to CERCLA § 107(a), including its oversight costs, and for a declaratory judgment of liability for future response costs. The complaint requested all costs incurred by the government that were related to removal or remedial action. The government moved for summary judgment in February 1994. The defendant-appellants responded that CERCLA did not authorize the government to recover costs for oversight of their performance of clean-up work. The district court granted summary judgment to the government. *United States v. Lowe,* 864 F.Supp. 628 (S.D.Tex.1994). The appellants now appeal to this court the district court's judgment relating to EPA oversight costs.[1]

## DISCUSSION

This appeal is taken from the district court's order granting summary judgment on the basis of its interpretation of a federal statute. We review such *de novo.* *Estate of Bonner v. United States,* 84 F.3d 196, 197 (5th Cir.1996). The appellants contend that the district court erred in ruling that the government was entitled to reimbursement of its costs incurred in oversight of the private party clean-up of the site. They argue that the oversight costs are not costs for which they can be held liable under § 107(a) of CERCLA. We disagree.

A.

---

[1]The appellants do not appeal the government's oversight costs related to a Remedial Investigation/Feasibility Study ("RI/FS") which is a study conducted in the initial phases of a Superfund site cleanup to determine the nature and extent of contamination, evaluate the risk to the public and the environment, and identify potential methods to clean up or adequately manage the contamination.

The appellants urge that we follow the Third Circuit's reliance on the "clear statement" doctrine expounded in *National Cable Television Ass'n, Inc. v. United States,* 415 U.S. 336, 94 S.Ct. 1146, 39 L.Ed.2d 370 (1974), when that circuit addressed the very same issue and held that the government could not recover oversight costs for a private party clean-up. *See United States v. Rohm and Haas Co.,* 2 F.3d 1265 (3rd Cir.1993). Under *National Cable,* Congress must "clearly state" its intent to impose particular fees on regulated industries in connection with licensing or permitting in order to exact such fees constitutionally within its taxing authority. The appellants contend that *National Cable* 's "clear statement" requirement should be applied to CERCLA because the administration of hazardous waste clean-up benefits the general public, and the assessment of fees on specific parties for the payment for benefits to the general public endows that fee with the character of a tax assessment. The appellants go on to argue that as a *de facto* tax payment, reimbursement of government oversight costs for a private party clean-up is impermissible under *National Cable* absent language in the statute indicating a clear intent that the EPA have the authority to recover such oversight costs.

We agree with the government and find the interjection of the *National Cable* doctrine inappropriate to our consideration of this issue of reimbursement of oversight costs.[2] *National Cable* and its

---

[2]*Rohm and Haas,* and its reliance on *National Cable,* represented a significant departure from prior case law. For example, when addressing government oversight of a private party

3

progeny concern the imposition of user fees on regulated entities seeking authorization to do business.[3] *See Miss. Power & Light Co. v. U.S. Nuclear Regulatory Comm'n,* 601 F.2d 223, 227 (5th Cir.1979). CERCLA does not assess user charges on a regulated industry; rather, it is a remedial statute, *see United States v. R.W. Meyer,* 889 F.2d 1497, 1504 (6th Cir.1989). CERCLA response costs are neither fees nor taxes, but rather, payments by liable parties in the nature of restitution for the costs of cleaning up

cleanup, the Second Circuit had held that the state government's costs in assessing the conditions of a site and in supervising removal of the waste by a private party "squarely fall within CERCLA's definition of response costs, even though the State is not undertaking to do the removal." *New York v. Shore Realty Corp.,* 759 F.2d 1032, 1043 (2d Cir.1985). A number of courts had previously held that under CERCLA § 107, the EPA can recover administrative and indirect costs associated with a government cleanup. *See, e.g., United States v. Ottati & Goss, Inc.,* 900 F.2d 429, 444 (1st Cir.1990); *United States v. R.W. Meyer, Inc.,* 889 F.2d 1497, 1504 (6th Cir.1989); *Kelley v. Thomas Solvent Co.,* 790 F.Supp. 719, 729 (W.D.Mich.1990); *United States v. Hardage,* 733 F.Supp. 1424, 1438-39 (W.D.Okla.1989), *aff'd. in part and rev'd in part on other grounds,* 982 F.2d 1436 (10th Cir.1992).

In rejecting *Rohm and Haas,* we are in good company. *See Atlantic Richfield Co. v. Am. Airlines, Inc.,* 98 F.3d 564 (10th Cir.1996); *Pneumo Abex Corp. v. Bessemer and Lake Erie R.R. Co.,* Inc., 936 F.Supp. 1250, 1262-63 (E.D.Va.1996); *Town of New Windsor v. Tesa Tuck, Inc.,* 935 F.Supp. 317, 324-27 (S.D.N.Y.1996); *California v. Celtor Chem. Corp.,* 901 F.Supp. 1481, 1489-90 (N.D.Cal.1995); *United States v. Ekotek, Inc.,* 1995 WL 580079, at *4-*5 (D.Utah 1995); *Cal. Dep't of Toxic Substances Control v. SnyderGeneral Corp.,* 876 F.Supp. 222, 225 (E.D.Cal.1994).

[3]In *National Cable,* the Supreme Court held that a federal executive agency assessment which recoups the costs of overseeing a regulated industry constitutes a federal tax to the extent that it exceeds the value of the benefit of regulation to the regulated group, and that under the separation of powers doctrine, the federal government cannot collect such a tax unless Congress's intent to delegate to the executive branch the discretionary authority to recover such a tax is clearly expressed. 415 U.S. 336, 94 S.Ct. 1146, 39 L.Ed.2d 370.

a contamination or a threatened contamination for which they are responsible. *Atlantic Richfield Co. v. Am. Airlines,* 98 F.3d 564, 568 (10th Cir.1996); *United States v. Monsanto Co.,* 858 F.2d 160, 174-75 (4th Cir.1988); *Continental Ins. Cos. v. Northeastern Pharm. & Chem. Co., Inc.,* 842 F.2d 977 (8th Cir.1988); *Md. Cas. Co. v. Armco, Inc.,* 822 F.2d 1348, 1352 (4th Cir.1987); *United States v. Northeastern Pharm. & Chem. Co., Inc.,* 810 F.2d 726, 749 (8th Cir.1986); *Town of New Windsor v. Tesa Tuck, Inc.,* 935 F.Supp. 317, 326 (S.D.N.Y.1996). As the Ninth Circuit explained, the Supreme Court did not announce universal definitions of a "tax" or "fee" in *National Cable,* but merely determined the meaning of the terms of the statute at issue. *Union Pacific R.R. Co. v. Public Utility Comm'n,* 899 F.2d 854, 859-61 (9th Cir.1990).

B.

Under CERCLA, the government may either conduct clean-ups itself or permit or require responsible parties to do so. CERCLA §§ 104(a) and 106, 42 U.S.C. §§ 9604(a) and 9606. Liability for costs incurred by the government or a private party in cleaning up a site is imposed by CERCLA § 107(a)(4), 42 U.S.C. § 9607(a)(4), which provides that responsible parties are liable for "all costs of removal or remedial action incurred by the United States government or a State or an Indian tribe not inconsistent with the national contingency plan" and "any other necessary costs of response incurred by any other person consistent with the national contingency plan." In other words, if the government's actions are response actions in harmony with the national contingency plan,

5

then costs incurred pursuant to those actions are recoverable from liable parties. *United States v. Hardage,* 982 F.2d 1436, 1441 (10th Cir.1992). The question presented is whether the government's oversight costs in a responsible party clean-up are response costs under CERCLA.

CERCLA § 101 defines the terms "response," "removal," and "remedial action." Responses consist of removals and remedial actions and "enforcement activities related thereto." CERCLA § 101(25), 42 U.S.C. § 9601(25). A "removal" is generally understood to be a short-term response and a "remedial action" is generally considered a long-term response or permanent solution. *See* CERCLA § 101(23) & (24), 42 U.S.C. § 9601(23) & (24); *Daigle v. Shell Oil Co.,* 972 F.2d 1527, 1533-34 (10th Cir.1992). Removal is defined broadly, as follows.

> [T]he cleanup or removal of released hazardous substances from the environment, such actions as may be necessary taken in the event of a threat of release of hazardous substances into the environment, *such actions as may be necessary to monitor, assess, and evaluate* the release or threat of release of hazardous substances, the disposal of removed material, *or the taking of such other actions as may be necessary to prevent, minimize, or mitigate damage to the public health or welfare or to the environment,* which may otherwise result from a release or threat of release.

CERCLA § 101(23), 42 U.S.C. § 9601(23) (emphasis added). "Remedial action" is also defined broadly and includes

> those actions consistent with permanent remedy taken instead of or in addition to removal actions in the event of a release of threatened release of hazardous substances so that they do not migrate to cause substantial danger to present or future public health or welfare or the environment. The term includes, but is not limited to, such actions at the location of the release as storage, confinement, perimeter protection using dikes, trenches, or ditches, clay cover, neutralization, cleanup of released hazardous substances and associated and

6

associated contaminated materials, recycling or reuse, diversion, destruction, segregation of reactive wastes, degrading or excavations, repair or replacement of leaking containers, collections of leachate and runoff, onsite treatment or incineration, provision of alternative water supplies, and any *monitoring* reasonably required to assure that such actions protect the public health and welfare and the environment.

CERCLA § 101(24), 42 U.S.C. § 9601(24) (emphasis added).

## C.

"Monitoring" is a term used in the definitions of both removal and remedial action. It is not defined in CERCLA. A term not defined in a statute must be construed in accordance with its ordinary and natural meaning, *United States v. Alvarez-Sanchez,* 511 U.S. 350, 357, 114 S.Ct. 1599, 1603, 128 L.Ed.2d 319 (1994), as well as the overall policies and objectives of the statute, *Brown v. Gardner,* 513 U.S. 115, 117-19, 115 S.Ct. 552, 555, 130 L.Ed.2d 462 (1994). *In re Locklin,* 101 F.3d 435, 439 (5th Cir.1996). Unless an application of the traditional principles of statutory construction reveals the plain language to be ambiguous, *i.e.,* susceptible to more than one reasonable interpretation, our inquiry ends as we must give effect to Congress's unambiguously expressed intent. *Reich v. Arcadian Corp.,* 110 F.3d 1192, 1195 (5th Cir.1997). As suggested above, the plain meaning of a word cannot be determined in isolation, but must be drawn from the context in which it is used. *Id.* at 1195-96. Given such a rule of statutory construction, a term is not considered ambiguous even though it may be susceptible to different interpretations when the context eliminates all but one of the meanings. *Id.* at 1196.

The verb "monitor" is generally synonymous with audit, check,

7

control, inspect, investigate, observe, oversee, regulate, review, scrutinize, study, survey, test and watch. *See* William C. Burton, *Legal Thesaurus* 337 *cited in Atlantic Richfield Co., 98 F.3d at 569; Webster's Third Internat'l Dictionary* 1460 (Philip B. Gove, ed.1993) *cited in Atlantic Richfield Co.,* 98 F.3d at 569; *see also Am. Heritage Dictionary* 848 (William Morris, ed.1970) ("to scrutinize or check systematically with a view to collecting certain specified categories of data" and "to keep watch over; supervise").

The term removal is aimed at containing and cleaning up hazardous substance releases. *See United States v. Hardage,* 982 F.2d 1436, 1448 (10th Cir.1992). Under a plain language statutory reading with an eye to context, the monitoring provided for under the "removal" definition relates to an evaluation of the extent of a "release or threat of a release of hazardous substances." 42 U.S.C. § 9601(23); *Daigle,* 972 F.2d at 1535. "Removal" action also includes those activities that are deemed necessary to prevent hazardous releases from adversely affecting the public health. *See Hanford Downwinders Coalition, Inc. v. Dowdle,* 71 F.3d 1469, 1477 (9th Cir.1995). It is unquestioned that EPA oversight is a necessary part of the removal process and ensuring compliance with standards aimed at the public health. Thus, the term removal action includes the monitoring conducted by the EPA via its oversight activities.

The "remedial action" definition expressly focuses on actions necessary to "prevent or minimize the release of hazardous

8

substances so that they do not migrate to cause substantial danger to present or future public health or welfare or the environment," 42 U.S.C. § 9601(24); *Price v. U.S. Navy,* 39 F.3d 1011 (9th Cir.1994), and so we read the term's inclusion of "such actions as may be necessary to *monitor, assess, and evaluate* the release or threat of release of hazardous substances," with such in mind. EPA oversight, or monitoring, is certainly part and parcel of preventing and minimizing the release of hazardous substances. Government oversight of private party remedial actions ensures that remedial actions will be effective in preventing or minimizing past or threatened releases, the essence of the definition of remedial action. *See* CERCLA § 101(24); *Atlantic Richfield Co.,* 98 F.3d at 569; *cf. Daigle v. Shell Oil Co.,* 972 F.2d 1527, 1535 (10th Cir.1992) (holding that CERCLA § 101(24)'s "monitoring" does not include medical monitoring of persons exposed to hazardous substances because that monitoring did not prevent or minimize a release or threatened release per CERCLA's definition of "remedial action").

In addition, response actions, which include both remedial and response actions, are defined to include "enforcement activities related thereto." CERCLA § 101(25), 42 U.S.C. § 9601(25). EPA oversight of removal and remedial actions that are conducted by responsible parties easily falls within this definition of response. As the district court explained, the EPA must evaluate all stages of the cleanup process, from the preliminary investigation through the final disposition of hazardous substances

9

at a site. *Lowe,* 864 F.Supp. at 631. Government monitoring or oversight is an inherent and necessary enforcement element of private party response action. CERCLA § 111(c)(8) clearly contemplates that the government must monitor private party remedial actions and CERCLA § 122(f)(3) and (5) *require* government monitoring of private party remedial actions. In the same vein, CERCLA § 122(a), 42 U.S.C. 9622(a), authorizes the EPA to settle with liable parties to perform response actions "if [EPA] determines that such action will be done properly." To meet those obligations, § 106(a) orders and consent decrees typically require that responsible parties meet performance standards, that the EPA conduct periodic reviews to determine that work meets the standards, that the EPA determine whether additional response actions are necessary, and that the EPA certify that a clean-up has been performed as required. *See* 42 U.S.C. § 9621; 40 C.F.R. § 1.47. Thus, government monitoring or oversight reasonably required to assure that private party actions protect the public health and welfare and the environment also qualifies as response activity under the "enforcement activities" component of the response definition. *Atlantic Richfield Co.,* 98 F.3d at 570 ("determin[ing] whether the action complies with a consent decree and the provisions of CERCLA is enforcement activity related to a remedial action, and therefore, is a response under § 101(25)"); *see also, e.g.,* 56 Fed.Reg. 30,996, 30,998 (July 8, 1991) (model consent decree for § 122 settlements requiring settling defendants to pay all response costs incurred by government including "reviewing or

developing plans, reports and other items" and "verifying the work, or otherwise implementing, overseeing, or enforcing this consent decree").

Finally, we note that any other reading of the statutory terms under discussion would produce a result that conflicts with CERCLA's goal of compelling private parties to perform clean-up operations. *See Ekotek,* 1995 WL 580079, at *8. In addition, an absurd incongruity would result if we were to permit the government to recover its costs for oversight of its own contractors, but not recover the costs of oversight of private party contractors. There is no basis in the statute for making such a distinction. Under CERCLA, response actions may be taken either by private parties or the government, neither § 101(24) nor § 101(23) distinguishes between private party and government actions, and the EPA has the authority under CERCLA § 104(a) to conduct removal and remedial actions if it determines that responsible parties have failed to complete necessary steps.

The enforcement activities of § 101(25)'s definition of response actions, the monitoring referred to in § 101(24)'s definition of removal action and the monitoring and necessary actions of § 101(23)'s remedial action all clearly include government oversight.[4] EPA oversight is an integral and critical

---

[4]Costs involved in the oversight of a private party clean-up are most assuredly not general administrative costs incurred by an administrative agency, as the appellants attempt to characterize them, but costs incurred in relation to the oversight of remedial or removal action at a specific site. "EPA oversight costs are not ... to pay the EPA's general administrative costs, but part of the damages caused or contributed to by specific persons." *Atlantic*

part of removal and remedial actions and of enforcing the terms of a governing order or consent decree. We join the Tenth Circuit and find that CERCLA's plain language and liability scheme authorize the EPA's cost recovery for the oversight of private party response actions.[5]  *See Atlantic Richfield Co.,* 98 F.3d 564.

## CONCLUSION

We conclude that government monitoring or oversight of a private party remedial or removal action is a response under CERCLA § 101(25).  Consequently, under CERCLA § 107(a)(4)(A), the responsible parties are liable for the costs of EPA oversight.  For the foregoing reasons, we AFFIRM the district court.

---

*Richfield Co.,* 98 F.3d at 568.

[5]While the *Rohm & Haas* court analyzed only the definition of removal and did not specifically discuss the definition of remedial action, and the *Atlantic Richfield* court focused its analysis on remedial action in deciding that oversight costs are response costs, there is no meaningful distinction between remedial and removal actions in the context of the issue of reimbursement of EPA oversight costs for private party clean-ups.  Accordingly, our holding encompasses both scenarios.